**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Respondent,**

v.

**Charles W. BARKER and Jo Ann Barker, Appellants.**

No. WD 63009.

Missouri Court of Appeals, Western District.

Sept. 14, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2004.

Application for Transfer Denied Dec. 21, 2004.

Bruce A. Bailey, Warrensburg, MO, for appellants.

David R. Buchanan, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Chief Judge.

Charles W. Barker and Jo Ann Barker ("the Barkers") appeal the grant of summary judgment to Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau") on their contract claim against Farm Bureau to recover $100,000 in benefits under the terms of the second of two separate underinsured motorist ("UIM") insurance policies issued to them by Farm Bureau. After the parties filed cross-motions for summary judgment, the Circuit Court of Lafayette County entered summary judgment in favor of Farm Bureau, determining that the language of the policies in question unambiguously disallowed stacking of UIM coverages. In this appeal, the Barkers claim the circuit court erred in entering summary judgment against them because the policies were ambiguous with regard to the total amount of UIM coverage provided. As we find that there was no ambiguity, we affirm the trial court's grant of summary judgment to Farm Bureau.

The facts of this case are not in dispute. The Barkers are the parents of Joni Barker, a young woman who died on July 19, 2000, when a vehicle being driven by Jody Jackson left an eastern Jackson County, Missouri roadway and struck a 38–inch diameter utility pole. Joni Barker was a passenger in the vehicle, which was not owned by Joni Barker or her parents. Jackson, who survived the accident, was insured by State Farm under an insurance policy with a per-person liability limit of $50,000. State Farm paid its policy limits to the Barkers. Before the fatal accident, Farm Bureau had sold to the Barkers two separate automobile insurance policies insuring two separate vehicles owned by

them, neither of which was involved in the accident. Each of the policies provided the Barkers with UIM coverage limited to $100,000 per person and $300,000 per accident. Both UIM policies were in effect at the time of the accident.

Farm Bureau paid the Barkers $100,000 under the terms of one of the UIM policies (policy number APV 0217995 02), contending that it had thereby met all of its contractual obligations to them. However, the Barkers subsequently sought to "stack" the per-person limits of both UIM coverages, arguing that they were entitled to an additional $100,000 payment from Farm Bureau under the terms of the other UIM policy (policy number APV 0026239 04). The parties filed competing motions for summary judgment. Farm Bureau contended that since the per-person limits of the two UIM policies could not be stacked, it had already paid the Barkers all of the UIM benefits to which they were entitled and did not owe them anything under policy number APV 0026239 04. The Barkers asserted that the UIM limits of the two policies could be stacked and, as such, Farm Bureau's previous $100,000 payment did not relieve it of all of its contractual obligations to them. On June 12, 2003, the circuit court sustained Farm Bureau's motion and denied the Barkers' motion, ruling that the subject policies unambiguously prohibited stacking of per-person UIM policy limits and entering judgment in favor of Farm Bureau. It is from this judgment the Barkers appeal.

As stated by the Missouri Supreme Court in *Harjoe v. Herz Financial*, 108 S.W.3d 653 (Mo. banc 2003), the standard of review governing this case is as follows:

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Additionally the non-movant is afforded the benefit of all reasonable inferences contained in the record. Review is de novo. Because the trial court makes its decision based upon the record submitted and the law, this Court need not defer to the order of the trial court granting summary judgment. Generally, summary judgment allows a trial court to enter judgment for a party where they have demonstrated a right to a judgment as a matter of law based upon facts about which there is no genuine dispute. The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question.

*Id.* at 654 (internal citations and quotation marks omitted). Thus, " '[a] movant is entitled to summary judgment if the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Butler v. Burlington N. & Santa Fe Ry. Co.*, 119 S.W.3d 620, 621 (Mo.App. W.D.2003) (quoting *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 74 (Mo.App. E.D.1999)).

In their sole point on appeal, the Barkers claim the trial court erred in sustaining Farm Bureau's motion for summary judgment because the insurance policies in question were ambiguous with regard to the total amount of UIM coverage in that the "Other Insurance" clause of the policies provided excess coverage for a non-owned vehicle.

 Before addressing the point, we briefly set forth the applicable rules of insurance contract construction under Missouri law. The language used in an insurance policy is to be given its plain meaning. *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). The plain meaning of the words and phrases used in an insurance policy is not deter-

mined in isolation, but with reference to the context of the policy as a whole. *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 108 (Mo.App. E.D.2004). Thus, in determining the meaning of the words and phrases of an insurance policy, "the court will not isolate ambiguous phrases, but will read the policy as a whole giving every clause some meaning if it is reasonably able to do so." *Mazzocchio v. Pohlman,* 861 S.W.2d 208, 210–11 (Mo.App. E.D. 1993).

Whether an insurance policy is ambiguous is a question of law. *Gulf Ins. Co. v. Noble Broad.,* 936 S.W.2d 810, 813 (Mo. banc 1997). The provisions of an insurance policy are ambiguous when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions. *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992). "Where provisions of an insurance policy are ambiguous, they are construed against the insurer." *Id.* However, " 'the courts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists.' " *State Farm Mut. Auto. Ins. Co. v. Ward,* 340 S.W.2d 635, 639 (Mo.1960) (quoting *Lynch v. Nat'l Life & Accident Ins. Co.,* 278 S.W.2d 32, 34 (Mo.App. E.D. 1955)). That is to say, "[a] court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Accident Ins. Co. of Am.,* 808 S.W.2d 379, 382 (Mo. banc 1991). "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Harrison v. MFA Mutual Ins. Co.,* 607 S.W.2d 137, 142 (Mo. banc 1980). When an insurance policy is unambiguous, "the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." *Krombach,* 827 S.W.2d at 210.

Furthermore, "in the absence of public policy considerations, an insured and an insurer are free to define and limit coverage by their agreement. There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer." *Rodriguez,* 808 S.W.2d at 383 (citing *Noll v. Shelter Ins. Co.,* 774 S.W.2d 147, 151 (Mo. banc 1989)). Accordingly, in Missouri, stacking of UIM policy limits is not allowed where the policies in question unambiguously prohibit it. *Rodriguez,* 808 S.W.2d at 383–84.

Farm Bureau contends that the "anti-stacking" provisions found in both policies at issue in this case clearly and unambiguously precluded stacking of the per-person UIM policy limits. In relevant part, the anti-stacking provision found in the "GENERAL PROVISIONS" section of both of the Barkers' policies reads as follows:

### TWO OR MORE AUTO POLICY LIMITS

If this policy and any other auto insurance policy issued to **you** by **us** apply to the same accident, the maximum limit of **our** liability under all policies will not exceed the highest applicable Limit of Liability under any one policy.

Farm Bureau reasons that since both policy number APV 0217995 02 and policy number APV 0026239 04 were issued to the Barkers by Farm Bureau and applied to the same accident (*i.e.,* Joni Barker's July 19, 2000 accident), its maximum UIM

liability limit under both policies cannot exceed $100,000, which is the highest applicable per-person UIM limit of liability under any one of the policies.

Although the courts of this state have apparently never had occasion to decide this precise issue, courts from other jurisdictions interpreting automobile insurance policies containing anti-stacking provisions worded either identically or almost identically to those in the Barkers' two policies have concluded that they were clear and unambiguous and, therefore, should be enforced as written to preclude stacking of separate UIM coverages. *See, e.g., Guidant Specialty Mut. Ins. Co. v. Overley,* No. 99–3317, 2000 WL 1475780, at *2, 2000 U.S.App. LEXIS 24932, at *7 (10th Cir. Oct. 5, 2000); *Ga. Farm Bureau Mut. Ins. Co. v. Shook,* 215 Ga.App. 66, 449 S.E.2d 658, 659 (1994); *Willison v. Economy Fire & Cas. Co.,* 294 Ill.App.3d 793, 229 Ill.Dec. 26, 690 N.E.2d 1073, 1076, 1077 (1998); *Union Ins. Co. v. Stanage,* 454 N.W.2d 736, 739 n. 3 (S.D.1990); and *Kendziora v. Church Mut. Ins. Co.,* 263 Wis.2d 274, 661 N.W.2d 456, 465 (2003).

The Barkers do not dispute this. Instead, they claim that a different section of their policies contains language which makes them ambiguous when considered as a whole. In particular, the Barkers point to the following language from the UIM endorsements of both their policies:

### OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage:

A. Any recovery for damages under all such policies or provisions of coverage may equal, but not exceed, the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

B. Any insurance **we** provide with respect to a vehicle **you** do not own will be excess over any collectible insurance providing coverage on a primary basis.

C. If the coverage under this policy is provided:

1. On a primary basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable Limits of Liability for coverage provided on a primary basis.

2. On an excess basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable Limits of Liability for coverage provided on an excess basis.

The Barkers argue that since "Section B makes the UIM excess coverage under [their] policies, this might reasonably be interpreted by an average layperson to prevail over [the] preceding and conflicting anti-stacking language in the general 'Two or More Auto Policy Limits' section" of their policies, at least where a vehicle not owned by the insureds is involved. They rely on *Niswonger v. Farm Bureau Town & Country Insurance Co.,* 992 S.W.2d 308 (Mo.App. E.D.1999), in which the Eastern District, with one judge dissenting, held that the insureds were entitled to stack the UIM coverages under their three separate Farm Bureau policies.

The Barkers' reliance on *Niswonger* is misplaced, however, because the language of the UIM endorsements in that case was much different than that of those in the

case *sub judice*. In *Niswonger*, the "other insurance" clause in the UIM endorsement read as follows:

> In the event there is other like or similar insurance applicable to a loss covered by this endorsement, this company shall not be liable for more than the proportion which this endorsement bears to the total of all applicable limits. **However, any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is excess of any similar insurance.**

*Id.* at 315 (emphasis in original). The *Niswonger* majority found that the emphasized sentence "could reasonably be construed as *superseding* certain other policy provisions which would normally and otherwise apply," namely, the anti-stacking provision found in the main body of each policy.[1] *Id.* at 315–16 (emphasis in original). The majority in *Niswonger* also stressed that the emphasized sentence: (1) was the very last sentence of the entire endorsement, and as such was to be construed "in favor of the insured" to the extent there was "a question concerning which preceding phrase or phrases it modifies," *id.* at 315 & n. 5; and (2) began with the word "However," which is "a word of exclusion, indicating an alternative intention, a contrast with a previous clause and a modification of it under other circumstances." *Id.* at 316 & n. 7.[2] For all these reasons, the *Niswonger* majority reasoned that the emphasized sentence "could easily be interpreted by a lay person to mean that it *prevails and takes precedence over* the policy's prior anti-stacking language whenever the accident is one where the insured was occupying a non-owned vehicle." *Id.* at 316 (emphasis in original). Ultimately, the majority concluded: "We find that the last sentence of the Original UIM Endorsement creates a genuine ambiguity in this case, because from the perspective of an average lay person that sentence, when read in conjunction with the policy as a whole, could be interpreted as superceding the anti-stacking provisions which might normally and otherwise apply." *Id.* at 318.

It is readily apparent that there is no such potential for confusion here. The sentence which was found to be offensive in *Niswonger* is not present in the Barkers' UIM endorsements, but was replaced by entirely different (and much clearer) language—namely, Sections A through C as set forth above. In particular, we think Section A, which was simply not present in the UIM endorsements construed in *Niswonger*, dispels the ambiguity and potential confusion found in the *Niswonger* policy. Section A makes it perfectly clear that whether the other applicable UIM insurance is considered primary or excess coverage, any recovery from Farm Bureau for damages under all such policies may not exceed the highest applicable limit for any one vehicle. That is to say, far from introducing any ambiguity when there is a covered accident involving a non-owned vehicle, as was found to be the case by the *Niswonger* majority, the UIM endorsement here actually reiterates and reinforces the provisions of the unambiguous anti-stacking clause found in the "GENERAL PROVISIONS" section of both of the Barkers' policies. To hold otherwise

---

1. That provision was as follows: "OTHER AUTOMOBILE INSURANCE IN THE COMPANY—With respect to any occurrence, accident, death or loss to which this or any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit under any one such policy." *Id.* at 314–15.

2. We note that neither of these factors are present in the case *sub judice*.

would be to distort the plain meaning of the language in the policies and create an ambiguity where none exists.

The Barkers also argue that Section C2 of the "OTHER INSURANCE" clause in the UIM endorsements of their policies is ambiguous and conflicts with the anti-stacking provision in the "GENERAL PROVISIONS" section. They claim that under Section C2, Farm Bureau's "proportionate share" is $100,000 under policy number APV 0217995 02, and an additional $100,000 under policy number APV 0026239 04. That being the case, the Barkers' argument continues, to "provide for payment of $200,000 under the Other Insurance 'proportionate share' language and then to limit the potential recovery under the anti-stacking language [in the general provisions section] is ambiguous." In support of their argument, the Barkers rely on another Eastern District case, *Clark v. American Family Mutual Insurance Co.*, 92 S.W.3d 198 (Mo.App. E.D. 2002).

However, the Barkers' reliance on *Clark* is also misplaced because, just as was the case with *Niswonger*, the language of the UIM endorsements in *Clark* was also much different than that of those in the case *sub judice*. In *Clark*, the "other insurance" clause in the UIM endorsement stated:

If there is other similar insurance on a loss covered by this endorsement, **we** will pay **our** share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an **insured person** while **occupying** a vehicle **you** do not own is excess over any similar insurance.

*Id.* at 201 (emphasis in original). The court in *Clark* began its analysis by distinguishing *Niswonger* on its facts. *Id.* at 202–03.[3] It then went on to observe: "The stated maximum of each [UIM] endorsement is $50,000.00. If each endorsement is considered, however, the 'total limit of all similar insurance' is $100,000.00 and American Family's proportionate share is $50,000.00 under one policy and $50,000.00 under the other." *Id.* at 203. Finally, the court in *Clark* found that the first sentence of the "other insurance" clause was ambiguous because there were "two possible ways to read the policy as to how to calculate coverage in this situation: (1) the insured may recover the proportionate share regardless of the stated maximum; or (2) the insured may only recover the stated maximum regardless of the proportionate share." *Id.* The Eastern District resolved this "conflict between the proportionate share language and the anti-stacking clause[4] by viewing the proportionate share language as overriding the anti-stacking clause in situations where there is more than one policy providing underinsured motorist insurance[,]" *id.*, ultimately holding that the Clarks were thereby entitled to stack their two separate $50,000 UIM

---

3. Unlike the plaintiff in *Niswonger*, the plaintiff in *Clark* was not occupying a non-owned vehicle at the time of the accident in question. *Id.* at 202. Because Mr. Clark was not occupying a non-owned vehicle, the court reasoned, "the second sentence of the Other Insurance provision does not apply and cannot be used to create an ambiguity allowing stacking" under *Niswonger*. *Id.* at 203.

4. The anti-stacking provision in the American Family policies at issue in *Clark* was as follows: "We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident." *Id.* at 201 (emphasis removed). The court in *Clark* did not find this clause to be ambiguous.

coverages and recover $100,000 in UIM benefits. *Id.* at 204.

The policies in this case do not suffer from the infirmities identified in *Clark.* To begin with, as we have previously held *supra,* Section A unambiguously resolves any purported "conflict" between the "OTHER INSURANCE" clause of the UIM endorsement and the anti-stacking clause found in the "GENERAL PROVISIONS" section of the Barkers' policies by clearly specifying that *regardless* of whether the other applicable UIM insurance is considered primary or excess coverage, any recovery from Farm Bureau for damages under all such policies may not exceed the highest applicable limit for any one vehicle. That is to say, unlike the policies construed in *Clark,* there is only one reasonable way to read the policies here, which is that the insured may recover from Farm Bureau only the highest applicable (per-person or per-accident) limit for any one vehicle regardless of the proportionate share.

Furthermore, as argued by Farm Bureau, even if Section A was absent, the proportionate share provision of the UIM endorsement's "other insurance" clause construed in *Clark* is materially different than the one here. As recounted *supra,* in *Clark,* the provision at issue was as follows: "If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to *this policy's* proportion of the *total limits of all similar insurance.*" (Emphasis added.) Here, however, the proportionate share of the loss payable by Farm Bureau is *not* determined by reference to "this policy" or "the total limits of all similar insurance." Instead, Section C2 specifies that Farm Bureau's proportional share for UIM coverage provided on an excess basis is to be determined by reference to the "share of the loss that must be paid under insurance providing coverage on an excess basis," which is defined as the "the proportion that *our Limit of Liability* bears to the *total of all applicable Limits of Liability* for coverage provided on an excess basis." (Emphasis added.) These differences are significant and distinguish the *Clark* policy from that in the instant appeal. By virtue of the "TWO OR MORE AUTO POLICY LIMITS" anti-stacking provision found in the "GENERAL PROVISIONS" section of the Barkers' policies, on the facts of this case (*i.e.,* where Farm Bureau itself issued both UIM policies at issue), the phrases "our Limit of Liability" and "total of all applicable Limits of Liability" both encompass only the highest applicable UIM policy limit for any one of the Barkers' vehicles. Thus Farm Bureau's proportionate share is limited to a maximum of $100,000, rather than $200,000, as claimed by the Barkers. In contrast, by broadly referring to *"this policy's* proportion of the *total limits of all similar insurance,"* in *Clark,* American Family left itself open to a construction that its proportionate share was $100,000 ($50,000 for each vehicle), rather than only $50,000. In this case, however, to apply the *Clark* rationale we would not only have to ignore Section A, but would also have to judicially broaden the language of Section C2, which is nowhere near the same as the corresponding provision in the American Family policy at issue in *Clark.* Point denied.

For the foregoing reasons, the trial court did not err in finding that the Barkers' policies were not ambiguous in prohibiting stacking of the separate UIM coverages. Accordingly, we affirm the trial court's grant of summary judgment to

Farm Bureau.[5]

All concur.

---

5. Farm Bureau's motion to strike the Barkers' reply brief, which we took with the case, is