Jacob BAILEY, Respondent,

v.

FEDERATED MUTUAL INSURANCE
COMPANY, Appellant.

No. WD 63419.

Missouri Court of Appeals,
Western District.

Oct. 12, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 23, 2004.

Application for Transfer Denied
Jan. 25, 2005.

Gary Willnauer, Michael Moulder, Kansas City, for Appellant.

Christian Faiella, Moberly, for Respondent.

PAUL M. SPINDEN, Judge.

■ The primary issue in this case is whether or not 16–year–old Terry Ehler was a customer of Forrest Chevrolet–Oldsmobile, Inc., in Columbia when in 1999 he crashed the dealership's pickup into another automobile. If Ehler was Forrest Chevrolet–Oldsmobile's customer, the dealership's insurer, Federated Mutual Insurance Company, was not liable as insurer of the loss because its policy excluded coverage of customers. The circuit court concluded that Ehler was not a customer because he was not the pickup's purchaser—his grandmother was. The circuit court erred in ruling that Ehler was not a customer. We, therefore, reverse its judgment.

The undisputed facts established that, a few days before the crash, Ehler visited Forrest Chevrolet–Oldsmobile with his grandfather and drove the pickup for a test before buying it. Ehler returned with his parents the next day and negotiated its purchase. Neither Ehler nor his parents could afford the purchase, but, because Ehler's grandmother, Darlene Kilburn, had told Ehler that she would lend him money to buy a vehicle, Forrest Chevro-let–Oldsmobile's business manager called her to discuss financing the purchase. After this conversation, Ehler wrote a personal check for $2000 towards the pickup's purchase price with the understanding that Kilburn was to finance the remainder. Forrest Chevrolet–Oldsmobile's personnel accepted Ehler's check but indicated on the receipt that the payment was from Ehler and Kilburn jointly. The dealership's personnel also included Kilburn's name as purchaser along with Ehler on several documents, including purchase and security agreements. Kilburn testified that she did not agree to have her name placed on sales documents, and she never considered herself to be purchasing the truck—she merely was providing financing for the purchase.

With financing arranged through Kilburn, Forrest Chevrolet–Oldsmobile personnel authorized Ehler to drive the pickup to Kilburn's house, accompanied by his father, to get Kilburn's check. Ehler crashed the pickup into another car while driving to Kilburn's house. Ehler's father died in the crash, and occupants of the other car, Diane and Jacob Bailey, were seriously injured.

The Baileys sued Ehler, and the parties entered into a consent judgment of $1 million against Ehler. The Baileys agreed to pursue only insurance proceeds in enforcing the judgment. The Baileys recovered $100,000 from an insurance policy issued to Ehler's father, and they sought to recover the remainder from Federated Mutual, which insured Forrest Chevrolet–Oldsmobile under a general garage policy. Federated Mutual refused to pay on the grounds that Ehler was Forrest Chevrolet–Oldsmobile's customer and was, therefore, expressly excluded from coverage by the policy. The Baileys filed an equitable garnishment action against Federated Mutual. The circuit court found that Ehler

was not a customer of Forrest Chevrolet–Oldsmobile and thus was covered under the garage policy. Federated Mutual appeals.

Because this was a court-tried case, the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), governs our review. Under that standard, we must affirm the judgment unless it is not supported by substantial evidence, is against the weight of evidence, erroneously declares the law, or erroneously applies the law. Because the circuit court did not make findings of fact, we deem it to have resolved factual disputes in accord with its judgment. *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo.App.1998). We view the evidence in the light most favorable to the prevailing party, but we " 'do not ... give the [party] the benefit of unreasonable, speculative or forced inferences.' " *Gray v. White*, 26 S.W.3d 806, 820 n. 10 (Mo.App. 1999) (quoting *Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App.1997)).

We conclude that the circuit court erred in concluding that Ehler was not Forrest Chevrolet–Oldsmobile's customer. Viewing the evidence in the light most favorable to the Baileys—even assuming, as the circuit court seemed to do, that Kilburn was the pickup's primary purchaser—the only reasonable inference to be drawn from Ehler's negotiating the pickup's purchase and his paying part of the purchase price as a co-purchaser was that he was a customer.

■ The cardinal rule for the courts in interpreting a contract, including an insurance policy, is to effectuate the parties' intent at the time of contracting. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). When a contract's language is clear, we discern the parties' intent from the document alone. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973).

In considering the contract's language, we understand it according to the plain and ordinary meaning of the words used, or the meaning that a person of average intelligence, knowledge, and experience would deem reasonable. *Farmland Industries, Inc. v. Republic Insurance Company*, 941 S.W.2d 505, 508 (Mo. banc 1997). The dictionary is a good source for finding the plain and ordinary meaning of contract language. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999). But we must be careful to consider the contract's context in applying the appropriate dictionary definition. *Wilshire Construction Company v. Union Electric Company*, 463 S.W.2d 903, 906 (Mo.1971).

■ We do not apply rules of construction unless a contract's language is ambiguous. *Shahan*, 988 S.W.2d at 535. If a contract's language is not ambiguous, we enforce it as written. *Williams v. National Casualty Company*, 132 S.W.3d 244, 246 (Mo. banc 2004). Whether language is ambiguous is a question of law. *Gulf Insurance Company v. Noble Broadcast*, 936 S.W.2d 810, 813–14 (Mo. banc 1997). In determining whether or not a word is ambiguous, we examine the entire contract and apply meanings a person of average intelligence and education would understand. *Shahan*, 988 S.W.2d at 535; *American Family Mutual Insurance Company v. Wemhoff*, 972 S.W.2d 402, 405 (Mo.App. 1998). Words are not ambiguous merely because their meaning and application confound the parties. *See Omaha Property and Casualty v. Peterson*, 865 S.W.2d 789, 790 (Mo.App.1993). Rather, "an ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Gulf Insurance Company*, 936 S.W.2d at 814.

"Customer" is unambiguous in this policy. *See Johnson v. Heritage Mutual Insurance Company,* 188 Wis.2d 261, 524 N.W.2d 900, 902 (1994). Thus, we construe it according to its plain and ordinary meaning. Its dictionary definitions pertinent to this case include "one that purchases some commodity or service ...: one that patronizes or uses the services[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 559 (1971). In *Empire Gas Corporation v. Graham,* 654 S.W.2d 329, 330 (Mo.App.1983), this court also consulted BLACK'S LAW DICTIONARY for the plain and ordinary meaning of "customer" which defined it as "one who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business." BLACK'S LAW DICTIONARY 386 (6th ed.1991); *see also* COUCH ON INSURANCE § 120:50 (3d ed.1997) (defining "customer" as "a person who, without making a purchase, has business dealings with the insured"). Hence, we reject the Baileys' contention that one must be a purchaser to be deemed a customer.

Even viewing the evidence in a light most favorable to the circuit court's judgment and deeming Kilburn to be the pickup's primary purchaser, the only reasonable inference to draw from the facts presented to the circuit court was that, as a matter of law, Ehler was a customer. Ehler visited Forrest Chevrolet–Oldsmobile several times with the intent to buy a vehicle. The dealership's sales personnel treated him as a customer and helped him look for, and select, a vehicle. Although his grandfather accompanied him, Ehler was the person selecting the vehicle. The dealership's personnel negotiated with Ehler and allowed him to test drive the vehicle. The dealership accepted his personal check for $2000 as partial payment of the pickup's purchase price. The only reasonable inference was that Ehler had business dealings with Forrest Chevrolet–Oldsmobile and, as a co-purchaser of the pickup, was its customer.

The Baileys argue that Ehler was not a customer because Forrest Chevrolet–Oldsmobile had a policy of not selling to minors. Not only did the dealership's general manager, Brad Forrest, contradict this by affirming that his dealership would sell to a minor if an adult co-purchaser were involved, but the dealership also took Ehler's check and recorded him in its documents as a co-purchaser. Even accepting the Bailey's most restrictive definition of customer—that a customer must be a purchaser—Ehler, as a co-purchaser, was still a purchaser.

We conclude that the circuit court erred in ruling that Ehler was not a customer. We, therefore, reverse the circuit court's judgment.

EDWIN H. SMITH, Chief Judge, and ROBERT G. ULRICH, Judge, concur.