Jeff **MILLER**, Respondent,

v.

Patrick Michael **O'BRIEN**, Respondent,

and

**State Automobile Mutual Insurance Company, Appellant.**

No. WD 64230.

Missouri Court of Appeals, Western District.

Aug. 2, 2005.

Robert W. Cockerham, T. Michael Ward, Brown & James, P.C., St. Louis, MO, for appellant.

J. Kirk Rahm, Warrensburg, MO, for respondent Miller.

Collin C. Theis, Kansas City, MO, for respondent O'Brien.

Before ROBERT G. ULRICH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

State Automobile Mutual Insurance Company ("State Auto") appeals from a summary judgment entered in the Circuit Court of Johnson County in favor of Jeffery Miller in an equitable garnishment action he filed against State Auto and Patrick O'Brien to satisfy the unsatisfied portion of a judgment Miller obtained in a personal injury action against O'Brien. In the equitable garnishment action, Miller claimed that O'Brien was entitled to insurance coverage under an insurance policy issued by State Auto to O'Brien's employer, Holden Animal Clinic, Inc. The trial court found that no material facts were in dispute, that O'Brien was an insured under the policy, that the accident was covered, and that Miller was entitled to judgment as a matter of law. For the following reasons, we reverse the trial court's judgment.

On November 5, 2001, O'Brien was driving his truck to work at the Holden Animal Clinic when his truck left the road and struck Miller, who was walking alongside the road. Miller sustained significant injuries from this accident. On December 27, 2001, Miller filed a personal injury action against O'Brien and the Holden Animal Clinic in the Circuit Court of Johnson County, and on April 11, 2003, Miller obtained a judgment against O'Brien for $430,760.36 in that action.[1]

At the time of the accident, Holden Animal Clinic was covered by a Business Owners Liability insurance policy issued by State Auto. After Miller obtained his judgment against O'Brien, he filed an equitable garnishment action against State Auto and O'Brien pursuant to § 379.200.[2] After all three parties filed motions for summary judgment, the trial court granted the motion for summary judgment filed by Miller and entered its judgment against State Auto, finding that O'Brien was an "insured" under the State Auto policy and that the accident was covered by the policy.[3] State Auto appeals from that judgment.

---

1. The jury also awarded Miller's wife $10,000.00 in her claim for loss of consortium.

2. All statutory references are to RSMo 2000 unless otherwise noted.

3. The court also denied State Auto's motion for summary judgment and motion to dismiss.

■ "The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Pratt v. Seventy–One Hawthorne Place Assocs., L.P.,* 106 S.W.3d 608, 611 (Mo.App. W.D.2003) (internal quotations omitted). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Missouri Employers Mut. Ins. Co. v. Nichols,* 149 S.W.3d 617, 623 (Mo.App. W.D.2004). We will affirm the grant of summary judgment if the movant was entitled to judgment based on any ground raised in the summary judgment motion and supported by the record. *Id.*

■ State Auto raises one point on appeal; however, that point contains two distinct claims of error on the part of the trial court. Grouping multiple allegations of error in a single point relied on that do not relate to a single issue violates Rule 84.04(d). *In re D.L.W.,* 133 S.W.3d 582, 584 (Mo.App. S.D.2004). A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on. *Woodson v. City of Independence,* 124 S.W.3d 20, 25 (Mo.App. W.D.2004). However, while State Auto's point relied on is deficient in this respect, the various claims of error are addressed separately within the argument and are clearly expressed. We, therefore, choose to review these claims of error despite this shortcoming in the point relied on. *See Id.*

In the first argument advanced, State Auto contends that, as a matter of law, O'Brien cannot properly have been found to be an "insured" as that term is defined in the policy. State Auto asserts that non-owned auto liability coverage under the policy was limited to partners and executive officers of Holden Animal Clinic and did not extend to ordinary employees.

Numerous provisions in the Businessowners Liability Coverage Form and two endorsements modifying that form are relevant to this inquiry. The "Who Is An Insured" section of the "Businessowners Liability Coverage Form" states that "[e]ach of the following is also an insured ... [y]our 'employees', other than either your 'executive officers' ... or your managers ..., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Accordingly, under this provision, O'Brien would qualify as an additional insured so long as he was acting within the scope of his employment or was performing duties related to the animal clinic. The "Exclusions" section of the "Businessowners Liability Coverage Form", however, states: "This insurance does not apply to ... g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.'" Thus, under the base policy form, no coverage would be afforded for any damages resulting from an automobile accident involving any insured, including O'Brien.

The "Businessowners Liability Plus Endorsement" states that it modifies the insurance provided under the "Businessowners Liability Coverage Form". In relevant part, the "Businessowners Liability Plus Endorsement" states:

Section C. Who Is an Insured, paragraph 2.a. is replaced by the following:

a. Your "employees" or volunteer workers, other than either your "executive officers" ... or your managers ..., but only for acts within the scope of their employment by you or while performing duties related to the conduct of

your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" or co-volunteer worker while that co-"employee" or co-volunteer worker is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or co-volunteer worker as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damage because of the injury described in paragraphs (1)(a) or (b); or

(d) Arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail drugstore operation, they are insured with respect to their providing or failing to provide professional health care service.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees" or volunteer workers, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

The only change made to the "Businessowners Liability Coverage Form" by this provision was to change section 2.a.(1)(d) to provide coverage to employee pharmacists involved in the insured's "retail drugstore operation" rather than those employed in the insured's "retail druggist or drugstore operation". The "Businessowners Liability Plus Endorsement" also provides that paragraph 1.g.(2) of Section B. Exclusions is to be replaced to state:

This exclusion does not apply to:

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

The "Businessowners Liability Plus Endorsement" also adds language to paragraph k of Section B. Exclusions to provide that paragraphs (3), (4) and (6) of the exclusion do not apply to property damage arising out of the use of elevators.

Finally, the "Hired Auto and Non–Owned Auto Liability" endorsement provides that it modifies the insurance provided in the Businessowners Policy. That endorsement states:

NON–OWNED AUTO LIABILITY

The insurance provided under the Businessowners Liability Coverage Form, Paragraph A.1. Business Liability, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned" auto" in your business by any person other than you.

The endorsement defines a "Non–Owned Auto" as "any 'auto' you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a 'non-owned auto' does not include any 'auto' owned by any partner." The "Hired Auto and Non–Owned Auto Liability" endorsement goes on to state:

For insurance provided by this endorsement only:

1. The exclusions, under the Businessowners Liability Coverage Form, Paragraph B.1. Applicable to Business Liability Coverages, other than exclusions a., b., d., f. and i. and the Nucle-

ar Energy Liability Exclusion, are deleted and replaced by the following:

\* \* \*

2. WHO IS AN INSURED in the Businessowners Liability Coverage Form, Paragraph C., is replaced by the following:

Each of the following is an insured under this endorsement to the extent set *forth below:*

a. You;

b. Any other person using a 'hired auto' with your permission;

c. For a 'non-owned auto', any partner or 'executive officer' of yours, but only while such 'non-owned auto' is being used in your business; and

d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.

None of the following is an insured:

\* \* \*

(2) Any partner or 'executive officer' for any 'auto' owned by such partner or officer or a member of his or her household;

\* \* \*

(4) The owner or lessee (of whom you are a sublessee) of a 'hired auto' or the owner of a 'non-owned auto' or any agent or 'employee' of any such owner or lessee; . . .

In its "Judgment as to Summary Judgment", the trial court found that (1) O'Brien was an "insured" as defined under the liability plus endorsement because he was an employee performing duties in relate to the clinic at the time of the accident, (2) the truck was a "non-owned auto" as defined in the "Hired Auto and Non-Owned Auto Liability" endorsement, and

(3) the auto exclusion in the base policy had been deleted by the "Hired Auto and Non-Owned Auto Liability" endorsement. The court found that the definition of an "insured" contained in the liability plus endorsement replaced the definition of "insured" contained in the "Hired Auto and Non-Owned Auto Liability" endorsement because the copyright date on the liability plus endorsement was later in time than that on the "Hired Auto and Non-Owned Auto Liability" endorsement and because the ambiguity created by the two definitions should be construed in favor of coverage. State Auto challenges these findings, asserting that the policy is not ambiguous and that O'Brien was clearly not an insured for purposes of the "Hired Auto and Non-Owned Auto Liability" endorsement.

■■■ "The general rules for interpretation of contracts apply to insurance policies." *Heringer v. American Family Mut. Ins. Co.,* 140 S.W.3d 100, 102 (Mo.App. W.D.2004). "The cardinal rule for the courts in interpreting a contract, including an insurance policy, is to effectuate the parties' intent at the time of contracting." *Bailey v. Federated Mut. Ins. Co.,* 152 S.W.3d 355, 357 (Mo.App. W.D.2004).

■■■ "The language used in an insurance policy is to be given its plain meaning." *Farm Bureau Town & Country Ins. Co. v. Barker,* 150 S.W.3d 103, 105 (Mo. App. W.D.2004). "The plain meaning of the words and phrases used in an insurance policy is not determined in isolation, but with reference to the context of the policy as a whole." *Id.* at 105–06. "[I]n the absence of the existence of an ambiguity, appellate courts must enforce the policy as written, giving the language of the policy its ordinary meaning." *Trans World Airlines, Inc. v. Associated Aviation Underwriters,* 58 S.W.3d 609, 622 (Mo.App. E.D.2001); *See also Heringer,* 140 S.W.3d

at 102 ("If an insurance policy is unambiguous, it is enforced as written absent a statute or public policy requiring coverage."). "We do not apply rules of construction unless a contract's language is ambiguous." *Bailey,* 152 S.W.3d at 357.

 "Whether an insurance contract is ambiguous is a question of law." *Barker,* 150 S.W.3d at 106. "The provisions of an insurance policy are ambiguous when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." *Id.* "To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy." *Heringer,* 140 S.W.3d at 103. "[C]ourts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Barker,* 150 S.W.3d at 106 (internal quotations omitted).

 As noted *supra,* the court found that the separate definitions of an "insured" found in the liability plus endorsement and the "Hired Auto and Non–Owned Auto Liability" endorsement created an ambiguity in the policy. The court then deemed the definition found in the liability plus endorsement to have replaced that contained in the "Hired Auto and Non–Owned Auto Liability" endorsement based upon the principle that ambiguities should be construed in favor of coverage and on the fact that the copyright date on the liability plus endorsement was later in time than the "Hired Auto and Non–Owned Auto Liability" endorsement. The trial court found that O'Brien was an "insured" as defined in the liability plus endorsement because he was an employee performing duties related to the clinic at the time of the accident and that the truck he was driving was a "non-owned auto" as

defined in the "Hired Auto and Non–Owned Auto Liability" endorsement. The court also found that the auto exclusion in the base policy had been deleted by the "Hired Auto and Non–Owned Auto Liability" endorsement.

The trial court's interpretation of the policy, however, is not consistent with the plain language of the policy. The Businessowners Liability Coverage Form defines "who is an insured" under the policy. The liability plus endorsement specifically replaces the language in "Section C. Who Is an Insured, paragraph 2.a." of the Businessowners Liability Coverage Form, making some subtle changes to the definition of an insured under the policy. Thus, the liability plus endorsement modified the definition of an insured contained in a specific portion of the base policy form.

The express language of the "Hired Auto and Non–Owned Auto Liability" endorsement, on the other hand, provides a different definition of "who is an insured" from the definition provided in the base policy *"for insurance provided by this endorsement only"*. The language contained in the definition specifically states, "Each of the following is an *insured under this endorsement ...."* (emphasis added). Accordingly, the endorsement clearly provides that "who is an insured" under the endorsement differs from "who is an insured" under the base policy.

Regardless of when the liability plus endorsement was drafted or copyrighted or where it was placed in the order of the forms comprising the policy, the language of that endorsement cannot be read to intend for its definition of "who is an insured" to supplant the definition provided for in the "Hired Auto and Non–Owned Auto Liability" endorsement. The language of the liability plus endorsement was clearly limited to replacing a specific portion of the language in the base policy

and did not purport to alter any language contained in any other endorsement. The "Hired Auto and Non–Owned Auto Liability" endorsement clearly and plainly contains its own definition of "who is an insured" with regard to who is covered by the supplemental insurance provided by that endorsement. Neither the liability plus endorsement nor the "Hired Auto and Non–Owned Auto Liability" endorsement is reasonably open to the interpretation afforded by the trial court that the definition of "who is an insured", as modified by the liability plus endorsement, was meant by the parties to supplant the definition of "who is an insured" in the "Hired Auto and Non–Owned Auto Liability" endorsement. Accordingly, the provisions of the policy defining "who is an insured" for purposes of the coverage afforded under the "Hired Auto and Non–Owned Auto Liability" endorsement is not ambiguous, and the trial court erred in finding to the contrary.

■■ O'Brien simply does not fall within the parameters of "who is an insured" as set forth in the "Hired Auto and Non–Owned Auto Liability" endorsement since he is not a named insured, a partner or executive officer of a named insured, or a person using a "hired auto" with the insured's permission. In fact, as the owner of the "non-owned auto" involved in the accident, the endorsement specifically excludes him from being considered an insured. In this regard, the endorsement states: *"None of the following is an insured:* ... The owner or lessee ... of a 'hired auto' or *the owner of a 'non-owned auto'* or any agent or 'employee' of any such owner or lessee." (emphasis added). As O'Brien does not qualify as an insured under this endorsement, the endorsement does not afford coverage to pay the judgment entered against O'Brien in favor of Miller.

■■ In similar fashion, the trial court also erred in finding that the auto exclusion contained in the Businessowners Liability Coverage Form was deleted for all purposes by the "Hired Auto and Non–Owned Auto Liability" endorsement. The language of the endorsement specifically provides that the auto exclusion (among others) is deleted *"[f]or insurance provided by this endorsement only."* This plain language does not provide for the auto exclusion to be generally removed from the policy and is only applicable to coverage provided under the "Hired Auto and Non–Owned Auto Liability" endorsement.

Furthermore, "[t]he plain meaning of the words and phrases used in an insurance policy is not determined in isolation, but with reference to the context of the policy as a whole." *Barker*, 150 S.W.3d at 105–06. "Thus, in determining the meaning of the words and phrases of an insurance policy, 'the court will not isolate ambiguous phrases, but will read the policy as a whole giving every clause some meaning if it is reasonably able to do so.'" *Id.* at 106 (quoting *Mazzocchio v. Pohlman*, 861 S.W.2d 208, 210–11 (Mo.App. E.D.1993)).

The coverage provisions of the "Hired Auto and Non–Owned Auto Liability" endorsement would be rendered meaningless if the deletion of the automobile exclusion were read to apply to the base policy. The endorsement specifically states that "[t]he insurance provided under the Businessowners Liability Coverage Form, Paragraph A.1. Business Liability, applies to 'bodily injury' or 'property damage' arising out of the use of any 'non-owned auto' in [the named insured's] business by any person other than [the named insured]." To read the deletion of the auto exclusion as applying to all of the coverage provided by the base policy, as opposed to just the coverage provided by the "Hired Auto and Non–Owned Auto Liability" endorsement,

would provide the insured with coverage for "bodily injury" or "property damage" resulting from an automobile accident involving any vehicle driven by the insureds or anyone else and would not be limited to hired or non-owned automobiles operated by persons other than the named insureds. This would render meaningless the language of the endorsement providing coverage for bodily injury or property damage arising out of the use of a non-owned automobile in the insured's business by a person other than the insured. Such was clearly not the intent of the language contained in the "Hired Auto and Non–Owned Auto Liability" endorsement.

Having determined that O'Brien was not, as a matter of law, an insured under the policy for the purposes of the automobile accident, we need not address State Auto's remaining claims of error.

The trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.