Kyle STEWART, Appellant,

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,** Respondent.

No. WD 72379.

Missouri Court of Appeals, Western District.

July 26, 2011.

Application for Transfer to Supreme Court Denied Aug. 30, 2011.

Application for Transfer Denied Oct. 25, 2011.

Sidney E. Wheelan, Moberly, MO, for appellant.

Bruce A. Moothart and Ryan J. Watson, Kansas City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES M. SMART, Judge and GREGORY GILLIS, Special Judge.

PER CURIAM.

Kyle Stewart appeals the summary judgment granted in favor of Liberty Mutual Fire Insurance Company on Stewart's breach of contract claim. Stewart contends the circuit court erred in determining that the anti-stacking language in his automobile liability insurance policy is not ambiguous. For reasons explained herein, we affirm the summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

In February 2007, Kyle Stewart, while a passenger in a vehicle driven by Zachary Tanner, was seriously injured in a single car collision. Tanner was insured by American Standard Insurance Company of Wisconsin on an automobile policy with a $100,000 limit. Stewart was insured by Liberty Mutual with a $100,000 policy limit for underinsured motorist (UIM) coverage on four separate vehicles.

Stewart obtained a judgment against Tanner for $500,000. American Standard paid Tanner's $100,000 policy limit to Stewart. Liberty Mutual denied Stewart's claim for payment on his UIM coverage.

On June 11, 2008, Stewart filed a petition alleging that Liberty Mutual breached the insurance contract by failing to pay the UIM policy limit of $100,000 on each of the four covered vehicles, for a total of $400,000. Two months later, Liberty Mutual paid Stewart $100,000 and denied any obligation to pay the policy limit on the remaining three vehicles based on an anti-stacking [1] provision in the policy.

In February 2010, Stewart was granted leave to file a Second Amended Petition alleging three counts against Liberty Mu-

tual. Count I alleged breach of contract for failure to pay an additional $300,000 for stacked coverage on the UIM insurance policy. Count II alleged vexatious refusal to pay the first $100,000 in underinsured coverage within thirty days without reasonable cause. Count III alleged vexatious refusal to pay the additional $300,000 in stacked coverage.

Liberty Mutual filed a motion for summary judgment contending that its limit of liability for UIM coverage was $100,000, which Stewart had already been paid. On March 10, 2010, the circuit court granted partial summary judgment, finding in favor of Liberty Mutual on Count I of the Second Amended Petition. Five days later, the circuit court made a docket entry stating: "As to Court[']s ruling in favor of Defendant and against Plaintiff as to Defendant's motio[n] for partial judgment on Count I, pursuant to Rule 74.01(b) said judgment is final and Court determines there is not a just reason for delay."

On April 15, 2010, Stewart moved to voluntarily dismiss without prejudice Counts II and III of his Second Amended Petition. By docket entry, the circuit court entered an order dismissing Counts II and III without prejudice on April 18, 2010.

Stewart appeals the summary judgment ruling on his Count I claim.

### FINAL JUDGMENT

■ We first address Liberty Mutual's contention that this appeal should be dismissed due to lack of a final judgment. Liberty Mutual argues the partial sum-

---

1. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 313 (Mo. App.1999).

mary judgment ruling on Count I did not resolve a "distinct judicial unit" because the related claims in Counts II and III remained pending. Liberty Mutual further asserts that Stewart cannot avoid the "distinct judicial unit" requirement by voluntarily dismissing Counts II and III without prejudice.

■ We have authority to review a case upon the issuance of a "final judgment" by a trial court. § 512.020; [2] Rule 74.01 [3]. As a general rule, a final judgment must dispose of all parties and all issues in the case and leave nothing for future determination. *Goodson v. Nat'l Sports and Recreation, Inc.*, 136 S.W.3d 98, 99 (Mo.App.2004). If the judgment is not final, we lack authority to consider the case and must dismiss the appeal. *Fischer v. City of Washington*, 55 S.W.3d 372, 377 (Mo.App.2001).

■ Rule 74.01(b) provides an exception to this general rule and permits the trial court to designate a final judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." The trial court's designation of a judgment as final "is effective only when the order disposes of a distinct 'judicial unit.'" *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). A judicial unit means that there has been final judgment on a claim, "and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Id.* (quoting *State ex rel. State Highway Comm'n v. Smith*, 303 S.W.2d 120, 123 (Mo.1957)).

■ The necessity of determining whether the trial court's judgment dis-posed of a "distinct judicial unit" only arises when other claims or counts "remain pending" before the court. *Id.* In this case, the circuit court's order granting partial summary judgment on Count I did not dispose of a "distinct judicial unit," because, at a minimum, Count I arose out of the same transaction or occurrence underlying Count III. Nevertheless, Stewart later voluntarily dismissed the remaining vexatious refusal claims in Counts II and III. Thus, there were no pending claims or parties and nothing left for determination by the circuit court. Upon the dismissal of Counts II and III, the previously "partial summary judgment" on Count I became a final judgment for purposes of appeal. See *Magee v. Blue Ridge Prof'l Bldg. Co., Inc.*, 821 S.W.2d 839, 842 (Mo. banc 1991) (summary judgment dismissing plaintiff's claim against one party for failure to state a claim, coupled with plaintiff's voluntary dismissal without prejudice of the remaining parties, previously partial summary judgment became a final judgment); *Mattes v. Black & Veatch*, 828 S.W.2d 903, 906 n. 4 (Mo.App. W.D.1992) (summary judgment granted to Black & Veatch, other defendants dismissed without prejudice, final judgment exists); *Partney v. Reed*, 839 S.W.2d 694 (Mo.App. S.D.1992) (summary judgment granted to plaintiff on their petition, summary judgment granted to plaintiff on defendant's counterclaim, defendant dismisses third-party petition resulting in final judgment for appeal).

We disagree with Liberty Mutual's assertion that the dismissal of Counts II and III without prejudice was improper as an attempt to "manufacture appellate jurisdiction." [4] Stewart was entitled to dismiss

---

**2.** All statutory citations are to RSMo.2000, as updated by RSMo. Cum.Supp.2010, unless otherwise indicated.

**3.** All rule citations are to Missouri Rules of Civil Procedure (2011) unless otherwise noted.

**4.** We recognize that our discussion here is contrary to the approach taken in *Shelter Mu-*

Counts II and III under Rule 67.02(b). The circuit court entered an order approving the dismissal on April 18, 2010. Once voluntarily dismissed, it was as if Counts II and II had never been filed, and the circuit court had no power to reinstate or otherwise consider the claims. *Richter v. Union Pac. R.R. Co.*, 265 S.W.3d 294, 297, 299 (Mo.App.2008). The summary judgment on Count I is a final judgment because no other claims or parties remain pending. Accordingly, we have appellate jurisdiction to review the summary judgment.

### PROPRIETY OF SUMMARY JUDGMENT

■ We turn now to the substantive issue on appeal. Stewart contends the circuit court erred in granting summary judgment in favor of Liberty Mutual on the breach of contract claim in Count I. Although the court did not explain the reason for its decision, we must presume that summary judgment was granted based on the reasons set forth in Liberty Mutual's motion for summary judgment. *Grisamore v. State Farm Mut. Auto. Ins. Co.*, 306 S.W.3d 570, 573 (Mo.App.2010) The motion argued that the limit of liability for Stewart's UIM coverage is $100,000 based on an anti-stacking provision in his automobile insurance policy. Stewart contends the circuit court erred in granting summary judgment on this ground because the anti-stacking language is ambiguous and, therefore, must be construed against Liberty Mutual.

■ A trial court may enter summary judgment for a moving party where there is a right to judgment as a matter of law based on facts about which there is no

genuine dispute. *Durbin v. Deitrick*, 323 S.W.3d 122, 125 (Mo.App.2010). Our review of a summary judgment is *de novo.* *Id.* Likewise, whether an insurance policy is ambiguous is also a question of law for our *de novo* review. *Id.*

Liberty Mutual provided UIM coverage to Stewart for the policy limit of $100,000 on four separate vehicles. The relevant terms of the insurance policy are as follows:

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured", and

2. Caused by an accident.

The owners or operators liability for these damages must arise out of ownership, maintenance or use of the "underinsured motor vehicle"...

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the schedule or in the declarations for each person for underinsured motorist coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the schedule or in the declarations for each accident for underinsured motorist coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

tual *Ins. Co. v. Vulgamott*, 96 S.W.3d 96 (Mo.App.2003). We conclude, however, that *Vulgamott* is inconsistent with the Supreme Court's holding in *Magee*, 821 S.W.2d at 842, and as applied by the Western and Southern

Districts in *Mattes*, 828 S.W.2d at 904 n. 4, and *Partney v. Reed*, 839 S.W.2d 694. We are obligated to follow the Supreme Court precedent.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the schedule or in the declarations; or
4. Vehicles involved in the accident ...

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.
2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance providing coverage on a primary basis.
3. If the coverage under this policy is provided
   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share in the proportion that our limit of liability bears to the total of all applicable limits of

liability for coverage provided on an excess basis.

Stewart acknowledges that the "Limit of Liability" clause prohibits the stacking of UIM coverage on his four vehicles. He asserts, however, that this "Limit of Liability" conflicts with the "excess" insurance provision for non-owned vehicles. Stewart argues that the "excess" provision, in Paragraph 2 under "Other Insurance," permits stacking when a claimant is injured in a vehicle he does not own.[5] He contends the conflicting provisions create an ambiguity because the excess coverage is promised in one section of the policy and then taken away in another section. *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132 (Mo.banc 2009).

When construing an insurance policy, we apply the meaning "which would be attached by an ordinary person of average understanding." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo.banc 2007). "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo.banc.1992). We do not evaluate the policy provisions in isolation but rather in terms of the whole policy. *Ritchie*, 307 S.W.3d at 135. If an insurance policy is unambiguous, we enforce it according to its terms; if it is ambiguous, we construe it against the insurer. *Seeck*, 212 S.W.3d at 132.

"Where an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo.App.2007). "Specifically, if 'an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is

5. There is no dispute that Stewart was injured while riding in a vehicle he did not own and as a result of an accident involving an "underinsured motor vehicle," as that term is defined in the policy.

ambiguous, and the ambiguity will be resolved in favor of coverage for the insured.'" *Id.* (*quoting Seeck,* 212 S.W.3d at 134). Thus, if policy language is ambiguous as to whether stacking is permitted, we construe the language of the policy against the insurer and in favor of stacking. *Ritchie,* 307 S.W.3d at 135.

Liberty Mutual urges us to follow our earlier holding against stacking in *Farm Bureau Town & Country Ins. Co. of Mo. v. Barker,* 150 S.W.3d 103 (Mo.App.2004), where Paragraphs 1 and 2 of the "Other Insurance" clause were virtually identical to the language in Stewart's policy. *Id.* at 107. *Barker* also involved claimants attempting to stack UIM coverage following an accident in a non-owned vehicle. The claimants argued that the anti-stacking provisions under the limits of liability clause conflicted with the "excess" language in the "Other Insurance" clause. *Id.* This court disagreed, finding that the first paragraph of the "Other Insurance" clause reaffirmed the anti-stacking provision:

> Section A [Part 1 here] makes it perfectly clear that whether the other applicable UIM insurance is considered primary or excess coverage, any recovery from Farm Bureau for damages under all such policies may not exceed the highest applicable limit for any one vehicle.... [T]he UIM endorsement here actually reiterates and reinforces the provisions of the unambiguous anti-stacking clause found in the "GENERAL PROVISIONS" section of both of the Barkers' policies.

*Barker,* 150 S.W.3d at 108.

Notably, *Barker* did not directly discuss the language of Paragraph 2 and, instead, relied primarily on the surrounding provisions in concluding that no ambiguity existed. As Stewart points out, the case law on the subject of ambiguity between anti-stacking provisions and "other insurance"

clauses has evolved since *Barker* was decided in 2004. In fact, as noted, the holding in *Barker* was questioned and partially abrogated by the Supreme Court's opinion in *Ritchie,* 307 S.W.3d at 139.

In *Ritchie,* the decedent, who died in an accident while riding in a vehicle she did not own, was covered by three separate UIM policies. *Id.* at 137. The policies included a Limit of Liability clause that was very similar to the one here. *Id.* at 136–37. The insurer claimed the decedent's family was only entitled to recover from a single policy due to anti-stacking provisions in the Limit of Liability clause. *Id.* at 134. The Supreme Court found the limit of liability provision was ambiguous in light of language in the "Other Insurance" clause, which stated: "Any coverage we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist coverage." *Id.* at 137.

The Supreme Court noted that its previous decision in *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, was "directly on point." *Ritchie,* 307 S.W.3d at 138. *Seeck* followed a "long line of precedent 'holding that conflicts between underinsured motorist policy limits ... and the provision of excess coverage in an excess or other insurance clause renders an insurance policy ambiguous,'" *Id.* (*quoting Seeck,* 212 S.W.3d at 133). Specifically, the Court explained that the "excess" provision suggests "that the policy's anti-stacking provisions, which might normally and otherwise apply, do not apply in the special situation where the insured is injured while occupying a non-owned vehicle." *Id.* at 137–38 (internal quotation marks and citations omitted).

The Court went on to discuss the "excess" provision in *Barker*—which is identical to the language at issue here—and distinguished it from the provision in *Ritchie:*

While the other insurance provision in *Barker* states that any insurance with respect to a non-owned vehicle will be "excess" over "primary" coverage provided by insurance that applies to the occupied motor vehicle, the Allied policy [in *Ritchie*] provides "excess" coverage over "*any other* collectible underinsured motorist coverage." In this way, the language in the Allied policy is more likely to create the impression that underinsured motorist coverages can be stacked when injury occurs in a non-owned vehicle.

*Id.* at 139. This distinction might initially lead to the conclusion that the provisions in *Barker* and in the Liberty Mutual policy would survive the test of ambiguity. However, the Court further cautioned:

In any event, no other court has cited *Barker* in any of the numerous underinsured motorist decisions since it was handed down. To the extent *Barker* is inconsistent with *Seeck* and the cases *Seeck* cites with approval, it no longer should be followed.

*Id.* at 139. Thus, we are left with the question of whether the policy language deemed acceptable in *Barker*—and distinguished from that in *Ritchie*—can be further reconciled with the test of ambiguity established in *Seeck*.

The Supreme Court summarized its holding in *Seeck as follows:*

Where there is an "excess" or "other insurance" clause that provides the underinsured coverage is excess over all other collectible insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage in the other insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor.

212 S.W.3d at 133 (quoting *Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 677–78 (Mo.App.1996)). The linchpin of the holding is that when a policy provides that UIM coverage is excess "*over all other collectible insurance* " it can reasonably be understood to mean that such coverage will be paid despite any other liability limitations in the policy.

In this case, however, the subject coverage is neither excess "over all other collectible insurance" nor "over other collectible underinsured motorist coverage" as in *Ritchie*. Rather, the Liberty Mutual policy provides that any UIM insurance with respect to a non-owned vehicle is "excess" over the "*primary* " coverage applicable to the non-owned vehicle. This provision cannot be understood to allow the stacking of multiple UIM coverages because the UIM coverage is not "primary." Here, unlike the policy language in *Seeck* and *Ritchie,* there is no conflict between the anti-stacking provision and the "excess" insurance provision. Consequently, the Liberty Mutual policy is not ambiguous and must be enforced as written to prohibit the stacking of UIM coverage on Stewart's four vehicles.

Liberty Mutual satisfied its contractual obligation to pay Stewart the single policy limit of $100,000 on the UIM coverage. Accordingly, there was no genuine issue of fact with regard to the breach of contract claim, and Liberty Mutual was entitled to judgment as a matter of law. The circuit court did not err in granting summary judgment on Count I in favor of Liberty Mutual.

### Conclusion

We affirm the circuit court's judgment.

ALL CONCUR.