Alfred Clement DURBIN, Respondent,

v.

Robert Lee DEITRICK,
Jr., Respondent,

and

American Family Mutual Insurance
Co., Appellant.

No. WD 71263.

Missouri Court of Appeals,
Western District.

Oct. 26, 2010.

David R. Frye, Esq., Overland Park, KS, and James C. Spangler, Esq., Sedalia, MO, for appellant.

James A. Montee, Esq., St. Joseph, MO, for respondent.

BEFORE DIVISION ONE: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Chief Judge and CYNTHIA MARTIN, Judge.

LISA WHITE HARDWICK, Chief Judge.

American Family Mutual Insurance Company ("American Family") appeals the circuit court's grant of summary judgment in favor of Alfred Durbin. The court determined that four automobile liability policies issued by American Family contained ambiguous anti-stacking language and, therefore, must be construed against American Family to permit stacking. For reasons explained herein, we affirm the circuit court's judgment.

FACTUAL AND PROCEDURAL HISTORY

On July 27, 2007, Durbin was injured when his vehicle was rear-ended by a truck driven by Robert Deitrick. The truck was owned by Deitrick's employer, B & L Towing ("B & L"), which had liability insurance with a policy limit of $500,000.

Deitrick was covered by four personal automobile liability policies issued by American Family for a Chevrolet Suburban, a Chevrolet S10, a Chevrolet Trailblazer, and a Chevrolet Cavalier. Each of the policies provided up to $100,000 in coverage.

On August 1, 2008, Durbin filed a First Amended Petition for Damages against Deitrick and American Family. The petition alleged that Durbin was injured as a result of the accident with Deitrick and that Deitrick's four personal automobile insurance policies provided coverage for the accident.

On September 8, 2008, Durbin accepted Deitrick's offer of judgment for $900,000. B & L's liability insurer paid the $500,000 liability policy limit to Durbin. American Family acknowledged the accident was within the scope of Deitrick's personal liability coverage and paid Durbin the $100,000 liability policy limit issued on Deitrick's Chevrolet Suburban but refused to

pay Durbin the policy limits of Deitrick's other three automobile liability policies.

On September 10, 2008, American Family filed an Answer to the First Amended Petition for Damages. American Family also filed a counterclaim against Durbin and a cross-claim against Deitrick, both seeking a declaratory judgment that only one of Deitrick's personal insurance policies could provide coverage for the accident based on an anti-stacking provision in all four of the policies.[1] The automobile liability policies issued by American Family to Deitrick provided:

### PART I—LIABLITY COVERAGE

. . . .

**We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the use of a **car** or **utility trailer.**

. . . .

### LIMITS OF LIABILITY

The limits of liability shown in the declarations apply, subject to the following ... **We** will pay no more than these maximums no matter how many vehicles are described in the declarations, or **insured persons,** claims, claimants, policies or vehicles are involved.

. . . .

### OTHER INSURANCE

If there is other auto liability insurance for a loss covered by this Part, **we** will pay **our** share according to this policy's proportion of the total of all liability limits. But, any insurance provided under this Part for a vehicle **you** do not own is excess over any other collectible auto liability insurance.

. . . .

### GENERAL PROVISIONS

. . . .

**3. Two or More Cars Insured.** The total of **our** liability under all policies issued to **you** by **us** shall not exceed the highest limit of liability under any one policy.

American Family moved for summary judgment on its counterclaim and cross-claim. Durbin filed a counter-motion for summary judgment, contending that the anti-stacking language in American Family's four liability policies is ambiguous and, therefore, must be construed in favor of permitting stacking of the remaining three policies.

After a hearing, the circuit court denied American Family's summary judgment motion and granted Durbin's counter-motion for summary judgment. The court found that American Family's policies were ambiguous because the Limits of Liability provision and Section 3 of the General Provisions appeared to prohibit stacking, but the second sentence of the Other Insurance provision appeared to permit stacking when liability coverage is afforded through use of a vehicle not owned by the covered individual. The circuit court construed this ambiguity against American Family and found that Deitrick's three remaining personal automobile liability policies could be stacked to provide additional coverage for the accident. American Family appeals the grant of summary judgment in favor of Durbin.

---

1. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 313 (Mo. App.1999).

## STANDARD OF REVIEW

■ "Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute." *Crossman v. Yacubovich*, 290 S.W.3d 775, 778 (Mo.App.2009) (*citing ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993)). Our review of the trial court's grant of summary judgment is *de novo*. *Id.* The issue of whether an insurance policy is ambiguous is also a question of law which we also review *de novo*. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

## ANALYSIS

■ In its sole point on appeal, American Family contends the circuit court erred in granting summary judgment in favor of Durbin because the four American Family liability policies issued to Deitrick unambiguously prohibit stacking. American Family argues the policies are not ambiguous because the second sentence of the Other Insurance provision is only implicated "[i]f there is other auto liability insurance for a loss covered." American Family asserts there is no "other auto liability insurance for a loss covered" because Section 3 of the General Provisions provides that total liability "shall not exceed the highest limit of liability under any one policy" and coverage was exhausted by American Family's payment of the limit of the policy issued on Deitrick's Chevrolet Suburban.

■ If an insurance policy is not ambiguous, we enforce the policy according to its terms; if a policy is ambiguous, we construe the language of the policy against the insurer. *Seeck*, 212 S.W.3d at 132. In construing the terms of an insurance policy, we apply " 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.' " *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009) (*quoting Seeck*, 212 S.W.3d at 132). "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). We do not interpret insurance policy provisions in isolation but rather evaluate the policy in terms of a whole. *Ritchie*, 307 S.W.3d at 135.

■ "Where an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo.App.2007). "Specifically, if 'an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured.' " *Id.* (*quoting Seeck*, 212 S.W.3d at 134). Thus, if policy language is ambiguous as to whether stacking is permitted, we construe the language of the policy against the insurer and in favor of stacking. *Ritchie*, 307 S.W.3d at 135.

The Supreme Court considered analogous anti-stacking language in a similar factual scenario in *Ritchie*, where the decedent passenger died as a result of an accident while riding in a vehicle not owned by her or her family. *Id.* at 134, 137. At the time of the accident, the decedent was covered by three separate underinsured motorist policies issued by the insurer. *Id.* at 137. The decedent's family sought recovery from the insurer for the policy limit of each of the policies. *Id.* at 134. The insurer responded that anti-stacking language in the policies permitted recovery from only a single policy. *Id.* The policies

contained a Limit of Liability provision which provided:

A. *The limit of liability shown in the Declarations for each person for Underinsured Motorists coverage is our maximum limit of liability for all damages for cause, loss of services, or death arising out of "bodily injury" sustained by any one person in any one accident.* Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the numbers of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident

*Id.* at 136–37. An "Other Insurance" provision in the policies stated:

*If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:*

1. *Any recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under this insurance or other insurance providing coverage on either a primary or excess basis.* In addition, if any such coverage is provided on the same basis, either primary or excess, as the coverage we provided under this endorsement, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits for coverage provided on the same basis.

2. *Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.*

*Id.* at 137.

Acknowledging the "long line of precedent 'holding that conflicts between underinsured motorist policy limits . . . and the provision of excess coverage in an excess or other insurance clause renders an insurance policy ambiguous,'" the Court held that the "Other Insurance" provision in the underinsured policy created an ambiguity as to whether the policy permitted stacking when the injuries occurred in a vehicle not owned by a covered individual. *Id.* at 138 (*quoting Seeck,* 212 S.W.3d at 133). The Court explained that reading Section 2 of the Other Insurance provision together with the Limit of Liability provision suggests "that the policy's anti-stacking provisions, which might normally and otherwise apply, do not apply in the special situation where the insured is injured while occupying a non-owned vehicle." *Id.* at 137–38 (internal quotation marks and citations omitted). The Court concluded that an "'ordinary person of average understanding,' reasonably could interpret this other insurance provision to mean that when an injured insured is occupying a non-owned vehicle and there are multiple underinsured motorist coverages . . . then each of the underinsured motorist coverages are excess to the other, and, therefore, may be stacked." *Id.* at 138 (internal citation omitted).

Additionally, in *Niswonger* we considered the second sentence of an Other Insurance provision of an underinsured motorist policy, using similar language to that used both here and in *Ritchie,* providing, "However, any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is

excess of any other similar insurance." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 315 (Mo.App.1999). We recognized "the fact that the sentence begins with the word 'However' suggests, and could easily be interpreted by a lay person to mean, that it *prevails and takes precedence over* the policy's prior anti-stacking language whenever the accident is one where the insured was occupying a non-owned vehicle" and construed the policy language against the insurer to permit stacking. *Id.* at 316, 318.

Here, similar to *Niswonger,* the American Family policies begin the second sentence of the Other Insurance provision with the word "But," while the second sentence of the Other Insurance provision examined in *Ritchie* does not contain any such qualifier. Accordingly, the second sentence of the Other Insurance provision contained in the American Family policies makes an even stronger case for ambiguity than the Other Insurance provision examined in *Ritchie.*

We, therefore, conclude that while the Limits of Liability provision and Section 3 of the General Provisions in the American Family policies appear to generally prohibit the stacking of multiple liability policies, the language of the second sentence of the Other Insurance provision, analogous to that of *Ritchie* and *Niswonger,* could reasonably be understood by a lay person to indicate an exception to this general prohibition in the specific case where liability coverage is afforded for injuries incurred through use of a vehicle not owned by a covered individual. Durbin was injured by Deitrick, the covered individual, while Deitrick was operating a vehicle he did not own. Because Deitrick's four personal automotive liability policies are ambiguous as to whether they may be stacked in this specific circumstance, we must construe the policy language against American Family and in favor of permitting stacking of Deitrick's four liability policies.[2]

Durbin was entitled to judgment as a matter of law on his defense of ambiguity to the anti-stacking language in the subject policies. Accordingly, the circuit court did not err in granting his motion for summary judgment.

### CONCLUSION

We affirm the circuit court's judgment.

All Concur.

---

**2.** American Family also cites generally to *First National Insurance Co. of America v. Clark,* 899 S.W.2d 520 (Mo. banc 1995) and suggests the fundamental differences in the purposes of underinsured motorist insurance and automotive liability insurance require that we hold that multiple automotive liability policies covering a single insured cannot be stacked. American Family does not cite any case law nor provide any compelling public policy reasons for such a rule or distinction. Thus, we are not persuaded by its suggestions.