**David BUSH, Respondent,**

v.

**SHELTER MUTUAL INSURANCE CO., Appellant.**

**No. WD 75696.**

Missouri Court of Appeals, Western District.

Aug. 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2013.

Application for Transfer Denied Nov. 26, 2013.

---

Stephen R. Bough, Kansas City, for Respondent.

Matthew B. Heath, Co-counsel for Respondent.

William C. Crawford, for Appellant.

James P. Maloney, Co-counsel for Appellant.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

Appellant Shelter Mutual Insurance Company ("Shelter") appeals from a judgment entered by the Circuit Court of Jackson County in which the circuit court granted summary judgment in favor of Respondent David Bush on the basis that Respondent was entitled to $200,000.00 in stacked underinsured motorist coverage under his four automobile insurance policies with Shelter. For the following reasons, the judgment is reversed, and the case is remanded.

The facts of this case are not in dispute. On May 1, 2010, a vehicle negligently driven by Earnest Case collided with Respondent's 2008 Chevrolet Corvette ("the Corvette"). Respondent sustained bodily injury in excess of $200,000.00 as a result of the collision. At the time of the accident, Case was insured by State Farm Insurance Company. His policy provided for $25,000 in liability coverage per person, and Respondent and State Farm subsequently entered into a settlement agreement for that amount.

Respondent then sought underinsured motorist coverage ("UIM coverage") from Shelter. At the time of the accident, Respondent had four automobile insurance policies with Shelter—one covering the Corvette involved in the accident and three other policies each covering one of Respondent's three other vehicles. Each of the four Shelter policies provided $50,000 in UIM coverage per person. Shelter refused to provide UIM coverage under the three policies not pertaining to the Corvette.

In 2012, Respondent filed suit against Shelter alleging that he was entitled to a total of $200,000.00 in stacked UIM coverage under the four policies. Shelter contested Respondent's claim for $200,000.00 in stacked UIM coverage on the basis that Respondent's three Shelter policies not pertaining to the Corvette contained an owned-vehicle exclusion provision that barred Respondent from receiving UIM coverage under those three policies. The exclusion provided that UIM "coverage does not apply: ... [t]o any portion of **damages** resulting from **bodily injury** sustained while an **insured** is **occupying** a **motor vehicle owned** by **you**, a **relative**, or any **resident** of **your** household; unless that vehicle is the **described auto**." (Emphasis in original). The Corvette was not a described auto on any of Respondent's three other Shelter policies.

Respondent and Shelter eventually filed competing summary judgment motions. In its summary judgment motion, Shelter contended that the owned-vehicle exclusion precluded Respondent from UIM coverage under Respondent's three Shelter policies not pertaining to the Corvette because, at the time of the accident, Respondent was occupying a vehicle he owned—the Corvette—that was not a described auto on the declarations pages of those three policies.[1] In his cross-motion for summary judgment, Respondent acknowledged the

---

1. In its motion for summary judgment, Shelter contended that Respondent was entitled to coverage only under the Corvette policy and that, under that policy, coverage was limited to $25,000. Shelter based its argument upon its belief that it was entitled to a $25,000 set-off due to Respondent's settlement with State Farm. In granting Respondent's cross-motion for summary judgment, the circuit court found that Shelter was not entitled to a $25,000 set-off. On appeal, Shelter did not challenge that finding and, at oral argument, Shelter conceded that Respondent was entitled to $50,000 in UIM coverage under the policy pertaining to the Corvette. Thus, we do not address the circuit court's grant of summary judgment with respect to the set-off issue.

exclusion but argued that the policies' "other insurance" clauses created an ambiguity as to whether stacking of the policies' UIM coverages was permitted and that ambiguity had to be resolved in Respondent's favor.

On September 10, 2012, the circuit court entered its judgment denying Shelter's summary judgment motion and alternatively granting Respondent's summary judgment motion. In its judgment, the circuit court relied upon *Long v. Shelter Insurance Companies*, 351 S.W.3d 692, 695 (Mo.App. W.D.2011), and found that the owned-vehicle exclusion contained in each of the three policies not pertaining to the Corvette was ambiguous. The circuit court explained that "[a]lthough not in direct conflict with other provisions contained in the policies, [it] believe[d] the appellate court would find that a lay person reading the policy would not realize that the effect of the exclusion clause would be to prevent that policy from being stacked with others." Thus, the circuit court concluded that Respondent was entitled to stack UIM coverage under his four Shelter policies.

Shelter now appeals from the circuit court's grant of summary judgment in Respondent's favor. "Whether summary judgment is proper is an issue of law that this Court reviews *de novo*." *Manner v. Schiermeier*, 393 S.W.3d 58, 61–62 (Mo. banc 2013). We review "the record in the light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and accord[ ] the non-movant 'the benefit of all reasonable inferences from the record.'" *Id.* at 62 (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). Likewise, "[t]he interpretation of an insurance contract, and the determination whether coverage provisions are ambiguous, are questions of law that we review *de novo*." *Long*, 351 S.W.3d at 695.

 In its sole point on appeal, Shelter contends that the circuit court erroneously granted Respondent's summary judgment motion because the owned-vehicle exclusion provisions found in Respondent's three Shelter policies not pertaining to the Corvette unambiguously preclude UIM coverage such that Respondent does not have multiple applicable coverages to stack. "The burden of showing that an exclusion to coverage applies is on the insurer." *Manner*, 393 S.W.3d at 62. Policy provisions "designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer." *Am. Standard Ins. Co. of Wis. v. Stinson*, 404 S.W.3d 303, 308 (Mo.App. E.D.2012) (internal quotation omitted). However, "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Long*, 351 S.W.3d at 696 (internal quotation omitted).

 "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation omitted). "[I]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Long*, 351 S.W.3d at 696 (internal quotation omitted). Nevertheless, we cannot "create an ambiguity to distort the language of an unambiguous insurance policy." *Miller v. Yun*, 400 S.W.3d 779, 784 (Mo.App. W.D.2013).

■ Shelter met its burden of establishing that the owned-vehicle exclusion applies. The UIM endorsement reads as follows:

EXCLUSIONS FROM COVERAGE:

This coverage does not apply:

. . . .

(3) To any portion of **damages** resulting from **bodily injury** sustained while an **insured** is **occupying** a **motor vehicle owned** by **you,** a **relative,** or any **resident** of **your** household; unless that vehicle is the **described auto.**

The three policies further provide:

Insured means:

(a) **You;**

(b) any **relative;** and

(c) any **individual occupying** the **described auto** who is listed in the **Declarations** as an "additional listed insured", if:

(i) that **individual** does not **own** a **motor vehicle;** and

(ii) that **individual's spouse** does not **own** a **motor vehicle.**

**Occupy** means being in physical contact with a vehicle while:

(a) In it;

(b) getting into it; or

(c) getting out of it.

An **individual** who is not in physical contact with a vehicle is not occupying it.

**Own** means that the **person** referred to holds the legally recognized title to, or is a **leaseholder** of, an item of real or personal property, even if there are other **owners.** This definition is not changed by the pattern of usage of the property.

**You** means any **person** listed as a **named insured**[2] in the **Declarations** and, if that **person** is an **individual,** his or her **spouse.**

**Described auto** means the vehicle described in the **Declarations,** but only if a **named insured owns** that vehicle.

Thus, the owned-vehicle exclusion expressly provides that UIM coverage does not apply to bodily injury damages sustained while the insured is occupying a vehicle owned by him or her *unless* that vehicle is described on the policy's declarations page.

Here, it is undisputed that Respondent incurred his bodily injuries, for which he now seeks coverage, while occupying the Corvette that he, the insured under the policies, owned at the time of the accident. The Corvette is not described on the declarations page of Respondent's three other Shelter policies. The owned-vehicle exclusion, therefore, applies to the given facts of this case.

Respondent does not deny that, under the circumstances of this case, the exclusion applies. Nor does Respondent contend that the exclusion, in and of itself, is ambiguous. Rather, Respondent contends that, despite the owned-vehicle exclusion, he is entitled to stack UIM coverages under the four policies because an ambiguity arises as to stacking when the owned-vehicle exclusion is read in conjunction with the policies' "other insurance" clauses. Respondent, however, misconstrues the issue on appeal and, by doing so, attempts to create an ambiguity as to stacking where none exists.

First, Respondent mischaracterizes the basis under which Shelter is denying coverage. Shelter is not contesting coverage on the basis that coverage cannot be

**2.** The policy defines "named insured" to mean "any **person** listed in the **Declarations** under the heading 'Named Insured.' " Respondent is listed under the heading "Named Insured" on all four Shelter policies' declarations pages.

stacked under the policies; rather, Shelter is denying coverage on the basis that there is no coverage available to stack under the policies due to the owned-vehicle exclusion. Before stacking can be an issue, there must first be applicable coverages to stack. "[I]t necessarily follows that the person seeking to stack coverage must actually be an insured as to the particular loss under more than one coverage, and that the allegedly applicable policies, in fact, apply to the activity ... in question." 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 169:11 (2005). Thus, "[i]n any case potentially involving stacked coverages, the initial step for both insured and all potential insurers should be an analysis of whether there are multiple applicable coverages applicable." *Id.*

■ As previously discussed, the owned-vehicle exclusion included in the three policies not pertaining to the Corvette precludes coverage where, as here, the insured sustained his or her injuries while occupying a vehicle that he or she owns that is not listed on the policy's declarations page. Consequently, because of the owned-vehicle exclusion, no UIM coverage is available under Respondent's three Shelter policies not pertaining to the Corvette. Because no coverage is available under those three policies, there are not multiple applicable coverages available for Respondent to stack.[3] Thus, as Shelter correctly avers, the owned-vehicle exclusion does not prohibit Respondent from stacking UIM coverage under his four policies; rather, it is because of the owned-

vehicle exclusion that Respondent has no UIM coverage available under three of his four policies to stack.

Second, contrary to Respondent's contention, the owned-vehicle exclusion does not conflict with the "other insurance" clauses such that an ambiguity arises that would entitle Respondent to stack UIM coverage under the four policies. Respondent relies heavily upon the fact that Respondent's three Shelter policies not pertaining to the Corvette contain the same "other insurance" clause that we found gave rise to an ambiguity in *Long.*

In *Long,* a class of wrongful death beneficiaries sought to stack UIM coverage under the decedent's seven insurance policies with Shelter. *Id.* at 695. Shelter refused to stack UIM coverage under six of the policies on the basis that a general anti-stacking provision in those six policies unambiguously prohibited stacking of UIM coverage. *Id.* at 699. On appeal, we emphasized that "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Id.* at 700. In analyzing the policy as a whole, we found that the language in the policies' "other insurance" clauses "could be reasonably interpreted by an ordinary person of average understanding to mean that Shelter's UIM coverage would provide excess coverage to all other UIM policies, whether sold by other companies or by Shelter." *Id.* at 701. The promise of excess UIM coverage conveyed in the "other insurance" clause conflicted with the general anti-

---

**3.** It is important to note that this does not mean the owned-vehicle exclusion is an anti-stacking provision. An anti-stacking provision "prohibits the insured from collecting on multiple coverage items or policies from the same insurer for a single accident. In effect, it makes only one policy or coverage amount collectable." *Long,* 351 S.W.3d at 696–97 (internal quotation omitted). The owned-ve-

hicle exclusion does not prohibit Respondent from collecting coverage on multiple policies from Shelter or make only one policy amount collectable. Rather, it merely functions as an exclusion precluding UIM coverage under the three policies, the result of which is that no UIM coverage is available under those policies for Respondent to stack.

stacking provision, which stated that Shelter's liability "under all [its] policies will not exceed the highest limit of any one policy." *Id.* at 698, 701. Stated another way, the "other insurance" clause promised that, where UIM coverage was available under that Shelter policy, such coverage amounted to excess insurance to all other available UIM coverages, regardless of whether the insured's other available UIM coverages were Shelter policies. The anti-stacking provision took away that promised excess insurance by limiting Shelter's liability to the maximum UIM coverage available under one of its policies. Thus, we ultimately concluded that an ambiguity arose as to whether UIM coverage could be stacked under the decedent's seven Shelter policies because the "other insurance" clause conflicted with the general anti-stacking provision. *Id.* at 701.

▅▅▅ Respondent argues that a similar ambiguity arises as to stacking here because, when Respondent's policies are read as a whole, the owned-vehicle exclusion conflicts with the policies' "other insurance" clauses, especially in light of the fact that Respondent's Shelter policies contain the same exact "other insurance" clause analyzed in *Long*. We recognize that insurance provisions "must be interpreted by the court in the context of the policy as a whole and are not to be considered in isolation." *Id.* at 696. The owned-vehicle exclusion is no exception to this rule. And we further recognize "[w]here an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Id.* at 700. Unlike *Long*, however, this is not a situation in which the "other insurance" clause promises Respondent coverage and the owned-vehicle exclusion takes that coverage away.

The "other insurance" clause provides:

OTHER INSURANCE

If an **insured** suffers **bodily injury** for which benefits are payable under this coverage, it applies as excess insurance over all other underinsured motorist insurance available to that **insured.**

In breaking the clause down, we note it begins by stating "[i]f an **insured** suffers **bodily injury** *for which benefits are payable under this coverage....*" (Emphasis added). Thus, the first half of the "other insurance" clause qualifies its applicability upon UIM benefits being payable, or *available,* under the policy. Then we move to the second part of the "other insurance" clause. In *Long*, we concluded that this portion of the "other insurance" clause could be interpreted "to mean that Shelter's UIM coverage would provide excess coverage to all other UIM policies, whether sold by other companies or by Shelter." *Id.* at 701. Thus, when read as a whole, the "other insurance" clause promises that if UIM benefits are available under the policy, such coverage serves as excess insurance coverage to all other UIM policies, whether sold by Shelter or another company.

The owned-vehicle exclusion does not conflict with the "other insurance" clause's promise of excess coverage. It does not act to take away or limit otherwise available UIM coverage under the policy on the basis that other UIM coverage is available to or has been recovered by the insured. Rather, as previously explained, the owned-vehicle exclusion simply and unambiguously precludes coverage for damages sustained while the insured is occupying a vehicle he owns that is not included on the policy's declarations page. Thus, unlike *Long*, this is not a situation in which the owned-vehicle exclusion contradicts or takes away the "other insurance" clause's promise to the insured that, when UIM coverage *is available* under the policy, such coverage is excess insurance to all

other UIM coverages available to the insured.

Because the owned-vehicle exclusion does not take away coverage promised under the "other insurance" clause, no conflict exists between the two provisions when the policies are read as a whole. Thus, no ambiguity arises, and we must enforce the Shelter policies according to their terms. *See id.* at 696 ("Absent an ambiguity, an insurance policy must be enforced according to its terms."). The owned-vehicle exclusion, therefore, applies, and UIM coverage is precluded under Respondent's three Shelter policies not pertaining to the Corvette.

Accordingly, the circuit court erred in granting summary judgment in favor of Respondent. The circuit court's grant of summary judgment with respect to the $200,000.00 in stacked UIM coverage, therefore, is reversed, and the case is remanded to the circuit court to enter a judgment consistent with this opinion.

All concur.