

# Missouri Court of Appeals
## Southern District
### Division Two

FARMERS INSURANCE CO., INC.,  )
and MID-CENTURY INSURANCE CO., )
                                )
    Plaintiffs-Respondents,      )
                                )
vs.                             )    No. SD32632
                                )
ROBIN WILSON and                )    Filed March 20, 2014
DONALD BILLINGSLEY,             )
                                )
    Defendants-Appellants.       )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

AFFIRMED

Robin Wilson and Donald Billingsley ("Claimants") appeal the trial court's denial of their motion for summary judgment and its grant of summary judgment in favor of Farmers Insurance Company, Inc., and Mid-Century Insurance Company ("Farmers" and "Mid-Century" individually, and "Insurance Companies" collectively). Claimants argue that the trial court misapplied the law because the provisions in the three insurance policies at issue were ambiguous, requiring that the policies' liability limits be stacked.[1] Finding no merit in Claimants' argument, we affirm.

---

[1] "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which

**Factual and Procedural Background**[2]

Claimants are the parents of Wesley Billingsley. Wesley died as a result of an automobile accident involving a 2002 Dodge Intrepid ("Dodge"), which was driven by Hannah Thomas. Hannah is the daughter of Sheryl Thomas and John Thomas; all three were residing in the same household when the accident occurred.[3]

At the time of the accident, Sheryl and John owned four vehicles and had separate insurance policies on each. Sheryl was the owner of the Dodge, and a Farmers insurance policy was in effect that listed on its declarations page the Dodge as the insured vehicle and Sheryl as the named insured ("Dodge policy"). Sheryl was also the owner of a 2002 Chevrolet Tahoe, and a Farmers insurance policy was in effect that listed on its declarations page the Chevrolet as the insured vehicle and Sheryl as the named insured ("Chevrolet policy"). John was the owner of a 1997 Ford F-150, and a Mid-Century insurance policy was in effect that listed on its declarations page the Ford as the insured vehicle and John as the named insured ("Ford policy"). John was also the owner of a 2003 Harley-Davidson motorcycle, and a Farmers insurance policy was in effect that listed on its declarations page the motorcycle as the insured vehicle and John as the named insured ("Motorcycle policy"). The declarations pages of the Dodge, Chevrolet, and Ford policies each showed liability limits for bodily injury of $100,000 per person and $300,000 per occurrence, while the declarations page of the Motorcycle policy showed liability limits for bodily injury of $50,000 per person and $100,000 per occurrence.

---

covers more than one vehicle." ***Durbin v. Deitrick***, 323 S.W.3d 122, 124 n.1 (Mo. App. 2010) (quoting ***Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.***, 992 S.W.2d 308, 313 (Mo.App.1999)).

[2] Claimants and Insurance Companies stipulated to the facts submitted to the trial court on their cross-motions for summary judgment, and our facts are taken from that written stipulation.

[3] Because all three have the same last name, we refer to each in this opinion by his or her first name. No familiarity or disrespect is intended.

Claimants filed suit against Hannah for the wrongful death of their son. During the course of litigation, Claimants took the position that they could "stack" the liability limits of all four policies and thus demanded $350,000 from Hannah. The suit was ultimately settled pursuant to section 537.065, RSMo 2000, with Farmers paying Claimants $100,000—the liability limit under the Dodge policy—in exchange for the protection of Hannah's assets in any future judgment arising out of the accident, other than her rights under the Chevrolet, Ford, and Motorcycle policies. Claimants further agreed to participate in an action for declaratory judgment to determine whether the additional policies' liability limits should be stacked on top of the $100,000 liability limit already paid.

Insurance Companies filed the underlying action for declaratory judgment claiming that exclusion number ten of the Chevrolet and Ford policies and exclusion number nine of the Motorcycle policy excluded the Dodge from coverage under each respective policy because the Dodge was "a vehicle other than '**your insured car**', as that term is defined by the polic[ies], which was owned by or furnished or available for regular use by the insured or a 'family member'." Insurance Companies further claimed that, even if those exclusions did not apply, the anti-stacking language in the "Other Insurance" provisions of the policies prevented Claimants from stacking the liability limits. In their answer, Claimants argued that the language in each of the policies was ambiguous, allowing them to recover the maximum liability limit from each policy. Both parties filed motions for summary judgment asserting their respective positions.

The trial court entered a judgment granting Insurance Companies' motion for summary judgment, denying Claimants' motion, and entering declaratory judgment in favor of Insurance Companies. This appeal followed.

## Standard of Review

> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (internal citations omitted).

## Discussion

In their sole point on appeal, Claimants argue that the trial court erred in denying their motion for summary judgment[4] and granting Insurance Companies' motion by misapplying the law because "the language in the Other Insurance clauses" conflicts "with the policy's [sic] exclusionary and anti-stacking provision languages and created ambiguities which require the stacking of the three additional household policies." We disagree, finding no coverage under any of the three additional policies.

"Before stacking can be an issue, there must first be applicable coverages to stack." *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 341 (Mo.App. 2013). Therefore, "[i]n any case potentially involving stacked coverages, the initial step for both insured and all potential insurers should be an analysis of whether there are multiple applicable

---

[4] "Ordinarily, the denial of a motion for summary judgment will not be reviewed on appeal." *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869, 879 (Mo.App. 2012). Where, however, the material facts are undisputed and the merits of the denied cross-motion for summary judgment are inextricably intertwined with the issues raised in the granted motion for summary judgment, the merits of the denial of the cross-motion may be reviewed on appeal. *Id.* The trial court's denial of Claimants' cross-motion for summary judgment and this appeal of that denial fall within the latter category.

4

coverages applicable." *Id.* (internal quotation marks omitted). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation marks and citation omitted). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997). Absent any ambiguity, however, "an insurance policy must be enforced according to its terms." *Seeck*, 212 S.W.3d at 132.

### *Motorcycle Policy Provides No Coverage*

The Motorcycle policy contains the following language:

**PART I – LIABILITY**

**Coverage A – Bodily Injury**

**Coverage B – Property Damage**

> We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and/or **property damage** arising out of the ownership, maintenance or use of a **motorcycle**.

The Motorcycle policy also provides that the term "[m]otorcycle means a two wheel land motor vehicle licensed for use upon public highways."

Nothing in the stipulated facts supports that the Dodge is a motorcycle. Claimants could not explain at oral argument how a four-wheel vehicle like the Dodge is a motorcycle as defined in the policy. The Motorcycle policy only affords coverage arising out of the use of a motorcycle, as that term is defined in that policy. Therefore, because the Dodge is not a "two wheel land motor vehicle," there is no coverage under the

5

Motorcycle policy arising out of the use of the Dodge by Hannah at the time of the accident.

### *Chevrolet and Ford Policies Provide No Coverage*

There are a number of provisions that are essential to an insurance policy. The policy must identify: the "insured," the individual or entity with the interest at risk; the "coverage" or "insuring agreement," the subject matter and the contingency insured against;[] the "period," the dates prescribing the duration of the risk or contingency insured against; and the "limits," the amount the insurer is liable to pay for any given risk up to a specified amount. The essential terms are usually stated in abbreviated form on a declarations page.

Insurance policies also usually include a number of other categories of terms. "Definitions" are usually provided for key terms. "Conditions" are usually specified regarding the parties' respective obligations. "Exclusions" are usually stated that limit risks that otherwise might have been covered, and "Endorsements" are often made adding coverage of risks that otherwise might not have been covered.

*Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (footnote omitted).

In determining whether ambiguities exist, all of these provisions must be read "as a whole, rather than in isolation." *Stone v. Farm Bureau Town & Country Ins. Co. of Missouri*, 203 S.W.3d 736, 746 (Mo.App. 2006). "Proper interpretation requires that we seek to harmonize all provisions of the policy to avoid leaving some provisions without function or sense." *Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo.App. 2002). "Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured." *Bellamy v. Pac. Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983). "Definitions, exclusions, conditions[,] and endorsements are necessary provisions in insurance policies. If they are clear and

unambiguous within the context of the policy as a whole, they are enforceable." **Todd**, 223 S.W.3d at 163.

Claimants contend that the "Other Insurance" provisions conflict with the listed exclusions and thus create an ambiguity as to whether the Dodge was covered under the two additional vehicle policies; ambiguities, as discussed *supra*, must be resolved in favor of the insured and, therefore, Claimants contend the liability limits of the Chevrolet and Ford policies must be stacked on top of the liability limits of the Dodge policy. We disagree.

As relevant here, both policies contain the following definitions:

Throughout this policy, "you" and "your" mean the "named insured" shown in the Declarations and spouse if a resident of the same household.

. . . .

**Family member** means a person related to you by blood, marriage or adoption who is a resident of your household.

. . . .

**Private Passenger Car** means a four wheel land motor vehicle of the private passenger or station wagon type actually licensed for use upon public highways.

. . . .

**Your insured car** means:

1. Any private passenger car or utility car described in the Declarations of this policy[5];
2. A replacement vehicle;
3. A substitute vehicle;
4. A rental vehicle;
5. An additional vehicle;
6. Any utility trailer:

---

[5] Claimants do not contend that the term "Your insured car," in the context of the stipulated facts, refers to any vehicle other than the insured vehicle described in the declarations of each respective insurance policy at issue. Therefore, we omit the policy definitions for replacement vehicle, substitute vehicle, rental vehicle, additional vehicle, and utility trailer.

7

a. That you own, or
b. If not owned by you, while attached to your insured vehicle.

Both policies also contain the following insuring agreement:

## SECTION I – LIABILITY

## Coverage A – Bodily Injury

## Coverage B – Property Damage

We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**.

We will defend any claim or suit asking for these **damages**. We may settle when we consider it appropriate.

We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage.

Both policies contain the following exclusion:

## Exclusions

This coverage does not apply to:

. . . .

10.     **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle other than **your insured car**, which is owned by or furnished or available for regular use by you or a **family member**.

Finally, both policies provide:

## Other Insurance

. . . .

Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

We begin our analysis with the conditions of the insuring agreement. It is uncontroverted that Hannah was an "insured person" at the time of the accident and that the Dodge she was driving at the time of the accident was a "private passenger car." Therefore, her use of the Dodge meets the conditions for inclusion in the broad general class of persons afforded liability coverage in the insuring agreement, unless otherwise excluded from coverage. We next turn to whether Hannah's use of the Dodge at the time of the accident falls within an excluded subgroup of that general class.

"Policy provisions designed to cut down, restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer. However, absent an ambiguity, an insurance policy must be enforced according to its terms." *Bush*, 412 S.W.3d at 339 (internal quotation marks and citations omitted).

Insurance Companies contend that the Dodge falls within exclusion number ten (sometimes referred to as the "regular use exclusion"), *supra*, of the Chevrolet and Ford policies because it is a "vehicle other than your insured car, which is owned . . . by you or a family member." Claimants do not dispute the first part of the proposition, but contend that because the policy definition of "you" means "the 'named insured' shown in the Declarations and spouse if a resident of the same household," the exclusion only applies to "vehicles other than your insured car" that are owned by both the named insured *and* spouse. Pointing out that the Dodge is owned solely by Sheryl, Claimants assert that the exclusion does not apply. Insurance Companies counter that the policies' definition of "you" unambiguously provide that both the named insured and the named insured's spouse individually satisfy its meaning and that therefore the exclusion encompasses

9

vehicles owned by either individually or both together. ***State Farm Fire & Cas. Co. v. Berra***, 891 S.W.2d 150, 152 (Mo.App. 1995), seems to support this position. Nevertheless, citing ***Chamness v. Am. Family Mut. Ins. Co.***, 226 S.W.3d 199, 204 (Mo. App. 2007), Claimants assert that the existence of two reasonable interpretations of this definition creates an ambiguity that requires resolution in their favor such that the exclusion does not apply.[6] Because the exclusion also applies to exclude from coverage "vehicles other than your insured car" owned by *a family member*, we need not decide whether the policies' definition of "you" is ambiguous.

Assuming, without deciding, that "you" means both the named insured and the named insured's spouse together, as Claimants contend, that definition would also apply to the use of "you" and "your" in the policies' definitions of "family member," *supra*. Sheryl individually meets the definition of a family member in each policy because she is a person related by blood or marriage to both the named insured and the named insured's spouse and she resides in the named insured's and the named insured's spouse's household. Therefore, the exclusion applies regardless of the claimed ambiguity in the use of the word "you."

Because the Dodge is excluded from coverage under the Chevrolet and Ford polices, there is no coverage to stack, ***Bush***, 412 S.W.3d at 341, and nothing to trigger the "Other Insurance" clauses in those polices, ***id.*** at 342. Claimants' reliance on ***Ritchie v. Allied Prop. & Cas. Ins. Co.***, 307 S.W.3d 132 (Mo. banc 2009); ***Seeck***, 212 S.W.3d 129; ***Durbin v. Deitrick***, 323 S.W.3d 122 (Mo.App. 2010); and ***Chamness***, 226 S.W.3d 199,

---

[6] This alleged ambiguity in this exclusion is the premise for Claimants' argument that the "Other Insurance" provisions conflict with the exclusion and create an ambiguity. Claimants advance no argument that, even if the exclusion unambiguously excludes the Dodge from coverage, the "Other Insurance" provisions as compared to the exclusion, nevertheless, create an ambiguity.

to contend otherwise is misplaced. None of those cases involved an accident vehicle that was expressly and unambiguously excluded from coverage in the first instance in the other insurance policy at issue. Because neither policy affords coverage for the use of the Dodge by Hannah at the time of the accident, there is nothing to stack.[7] *See **Bush***, 412 S.W.3d at 341. Claimants' point is denied.

## Decision

The trial court's grant of summary judgment in favor of Respondents and denial of Claimants' cross-motion for summary judgment is affirmed.

GARY W. LYNCH, J. - Opinion author

JEFFREY W. BATES, P.J. - concurs

MARY W. SHEFFIELD, J. - concurs

---

[7] The application of the Missouri Motor Vehicle Financial Responsibility Law ("MVFRL"), section 303.190, RSMo 2000, to the insurance policies involved here was not an issue before the trial court and, therefore, is not an issue in this appeal.