

## MISSOURI COURT OF APPEALS
### WESTERN DISTRICT

KATINA PIATT, ET AL.,       )
                                  )   **WD76645**
            **Appellants,**     )
  **v.**                        )   **OPINION FILED:**
                                    )
INDIANA LUMBERMEN'S     )   **June 10, 2014**
MUTUAL INSURANCE COMPANY,  )
ET AL.,                    )
                                  )
            **Respondents.**    )

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Patricia S. Joyce, Judge**

**Before Division Three:  Anthony R. Gabbert, P.J.,**
**Victor C. Howard, and Thomas H. Newton, JJ.**

Ms. Katina Piatt *et al.* (Appellants) appeal the trial court's summary judgment for Indiana Lumbermen's Mutual Insurance Company (ILM) related to a $7 million judgment in a wrongful death action.  We reverse and remand.

### Factual and Procedural Background

In April 2007, Ms. Linda Nunley, age 54, was killed while working at Missouri Hardwood Charcoal, Inc. (Missouri Hardwood), when a kiln door[1] fell on her.  After Ms. Nunley's death, Appellants received $5,000 in workers' compensation[2] from

---

[1] Made of steel, the kiln door was sixteen feet wide, twelve feet tall, and weighed 2,000 pounds.

[2] Mr. Flowers testified that the insurance company that handled the workers' compensation policy was Missouri Wood Industrial Trust.

Missouri Hardwood under Section 287.240.[3]  In August 2008, the decedent's mother (Ms. Ivey Heirien) and children (Ms. Piatt (then Williams), Ms. Salina Nelson, and Mr. Frederick Nunley) filed a wrongful death suit under Sections 537.080 and 537.090 against Mr. Junior Flowers, owner of Missouri Hardwood at that time, and his son, Mr. Josh Flowers, for negligent practices related to the kiln doors.  They requested damages "in a fair and reasonable amount in excess of $25,000."

In response, Mr. Junior Flowers sought defense and indemnity from this claim from ILM, where he had two policies that covered Missouri Hardwood.  One was a general liability (GL) policy with a payment limit of $1 million per occurrence.  The other was an umbrella policy[4] with a payment limit of $5 million per occurrence.[5]

In September 2008, ILM informed Mr. Flowers by letter that there was no coverage for defense or indemnity for the lawsuit under either policy because coverage did not apply to matters related to workers' compensation or bodily injury.[6] Soon after,  Mr. Flowers filed a motion to dismiss for lack of subject matter jurisdiction.

---

[3] Statutory references are to RSMo 2000 and the Cumulative Supplement 2007, unless otherwise stated.

[4] "While a primary insurance policy provides the first layer of insurance coverage, an umbrella policy is used to provide specific coverage above an underlying limit of primary insurance." *Lero v. State Farm Fire and Cas. Co.*, 359 S.W.3d 74, 82 (Mo. App. W.D. 2011) (internal quotation marks and citation omitted).

[5] In the umbrella policy, the named insureds are "Missouri Tie Inc., Missouri Tie & Timber Inc., Missouri Hardwood Charcoal Inc., BBF Inc., and Mid-Missouri Boiler Inc."

[6] ILM closed the claim in May 2009.

In January 2010, a hearing was held on Mr. Flowers's motion to dismiss. Appellants argued that Section 287.120 should be strictly construed to be applied solely to employers and not to co-employees, as they then decribed Messrs. Flowers, whom they argued should not be immune from civil liability under the statute.

The trial court granted Mr. Flowers's motion to dismiss for lack of subject matter jurisdiction, finding that "the Missouri Workers Compensation Law is the exclusive remedy for the Decedent and [Appellants]." Appellants appealed. *Heirien v. Flowers*, 343 S.W.3d 699 (Mo. App. S.D. 2011).

Appellants argued that the circuit court erred in dismissing their petition with prejudice because "the Defendants are individual employees not entitled to the exclusivity protection of [Section] 287.120.1." *Id.* at 701. They further asserted that only employers enjoy such protection, and that Messrs. Flowers did not "fall under the statutory definition of employer." *Id.*

The *Heirien* court determined that "Defendants' motion to dismiss for lack of subject matter jurisdiction served to preserve the exclusivity provision in section 287.120 as an affirmative defense and nothing more." Id. at 703. It further held that "[t]he trial court had subject matter jurisdiction to hear this claim." *Id.* It reversed and remanded the case for further proceedings. *Id.*

After *Heirien*, Mr. Flowers executed an affidavit as part of a section 537.065[7] agreement with Appellants.  In the affidavit, Mr. Flowers stated that he was the "president, executive officer, and sole director" of Missouri Hardwood at the time of Ms. Nunley's death, that Ms. Nunley was an employee of the company and not his employee, and that he was not a co-employee.  He further stated that he was "acting in the scope and course of [his] authority and duties as president, executive officer, and director" of Missouri Hardwood when he allowed the kiln door policy to remain in effect, but he admitted no personal or company liability.  The agreement stipulated that, in the lawsuit soon to follow in Reynolds County, Mr. Flowers's real and personal property would be exempted from any resulting judgment lien, and any judgment obtained would be "satisfied solely from the proceeds of the . . . insurance policies . . . affording coverage to Defendant."  Upon receipt of the fully executed

---

[7] Section 537.065, entitled "Claimant and tort-feasor may contract to limit recovery to specified assets or insurance contract—effect," states:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

4

affidavit and agreement, Mr. Josh Flowers was dismissed from the suit with prejudice.

In March 2012, a bench trial was held. The trial court found that Ms. Nunley died "as a direct result of [Mr. Flower's] negligence," and awarded the plaintiffs $7 million in damages under Section 537.095.3.[8]

Appellants then filed an equitable garnishment action against ILM, seeking payment of the judgment. Appellants and ILM submitted motions for summary judgment. Appellants argued that ILM should pay the judgment because Mr. Flowers is covered under the policies as an executive officer. In its cross-motion for summary judgment, ILM argued that it is not required to pay the judgment because the policies exclude coverage for claims involving workers' compensation and bodily injury. The trial court denied Appellants' motion and granted ILM's. Appellants appeal.

## Standard of Review

"The propriety of summary judgment is purely an issue of law," so we will conduct a *de novo* review. *Truck Ins. Exch. v. Prairie Framing*, LLC, 162 S.W.3d 64, 79 (Mo. App. W.D. 2005) (internal quotation marks and citation omitted). Interpretations of insurance policies are questions of law that we determine *de novo*. *Becker v. Allied Prop. & Cas. Ins. Co.*, 422 S.W.3d 434, 436 (Mo. App. E.D. 2013).

---

[8] Section 537.095.3, found under the title, "Joinder of parties not required, when, effect on recovery—plaintiff ad litem, recovery, distribution," states:

> In any action for damages under section 537.080, the trier of the facts shall state the total damages found, or upon the approval of any settlement for which a petition or application for such approval has been filed, the court shall state the total settlement approved. The court shall then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.

"An abundance of caution must be exercised in granting a motion for summary judgment because it is an extreme and drastic remedy that borders on the denial of due process because the opposing party is denied its day in court." *Jordan v. Peet*, 409, S.W.3d 553, 557 (Mo. App. W.D. 2013) (internal quotation marks and citation omitted). Therefore, where the record does not support the granting of summary judgment, we will reverse. *Id.*

## Legal Analysis

Appellants raise nine points. We find the first point dispositive with respect to addressing Appellants' arguments in all points, except those that concern notice and vexatious refusal to pay.

In the first point, Appellants argue that the trial court erred in granting ILM's motion for summary judgment because Mr. Flowers is an insured under the GL policy as an executive officer. As the moving party seeking summary judgment on Appellants' claim for equitable garnishment, ILM bore the burden of proving that it was entitled to judgment as a matter of law. *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013). This burden may be satisfied by demonstrating one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

*Id.* Thus, ILM had to establish that there was no coverage for Appellants' claim based on the terms of the GL policy.

In determining coverage in insurance policies, "we first look to the insurance contract itself." *Becker*, 422 S.W.3d at 437. "In construing the terms of an insurance policy, we apply the meaning that would be attached by an ordinary person of average understanding if purchasing insurance, and resolve any ambiguities in favor of the insured." *Id.* at 436. "If the language in an insurance policy is clear and unambiguous, we must construe and enforce the policy as written." *Selimanovic v. Finney*, 337 S.W.3d 30, 35 (Mo. App. E.D. 2011). Insurance policies include conditions, definitions, endorsements, and exclusions. *Farmers Ins. Co., Inc. v. Wilson*, 424 S.W.3d 487, 493 (Mo. App. S.D. 2014) (internal quotation marks and citation omitted). "If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Id.* (internal quotation marks and citation omitted).

On the Declarations page, the named insured is listed as "Missouri Tie, Inc.," an "organization." The "Commercial General Liability Coverage Form" indicates that "'insured' means any person or organization qualifying as such under Section II – Who Is an Insured." The referenced section reads as follows:

Section II – Who Is An Insured
. . . .

1.  If you are designated in the Declarations as:

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
    . . . .

7

2. Each of the following is also an insured:

    a. Your 'volunteer workers' only while performing duties related to the conduct of your business, or your 'employees,' other than either your 'executive officers' (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

The policy defines an "executive officer" as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document." Under Missouri law, duties of executive officers may be broadly defined for purposes of liability coverage, and they need not solely be managerial in nature to be captured within the scope of duties deemed eligible for coverage. *See Martin v. U.S. Fidelity & Guar. Co.*, 996 S.W.2d 506, 509-10 (Mo. banc 1999).

In granting summary judgment to ILM, the trial court reasoned that there was no coverage for Appellants' claim due to applicable exclusions in the policy based upon its assessment that Mr. Flowers was the employer. This is inaccurate. The GL policy clearly provides coverage for three categories of insureds—the organization named on the Declarations page, certain employees or workers other than executive officers, and executive officers. Based upon a plain meaning interpretation of this policy, coupled with Mr. Flowers's self-identification as "president, executive officer, and sole director" of Missouri Hardwood, an "organization other than a partnership, joint venture or limited liability company," we find that Mr. Flowers is insured as an executive officer. Thus, the trial court erred in granting summary judgment to ILM because it based its decision on an irrelevant analysis of whether Mr. Flowers was

8

effectively Ms. Nunley's employer in contravention of the plain language of the policy. Accordingly, we grant point one.

The trial court granted summary judgment on two additional grounds—inadequate notice to ILM of amendments to the underlying petition and a denial of Appellants' assertion of ILM's vexatious refusal to pay the judgment.

In points six and seven, Appellants argue that the trial court erred in granting summary judgment to ILM on the basis of inadequate notice of the amended petition. The trial court declared that summary judgment should be granted because Appellants did not timely notify ILM about an amendment to the underlying petition that led to the $7 million judgment, thereby prejudicing ILM because it was not given an opportunity to defend the claim. The amendment changed Mr. Flowers's classification from a "co-employee" to an "executive officer." This amendment could not have prejudiced ILM as a matter of law. ILM had notice of the initial claim against an employee of its named insured. ILM opted not to defend based not on Appellants' assertion that Mr. Flowers was a "co-employee," but instead because ILM viewed *all* claims for workers' compensation and bodily injury to be excluded from coverage, regardless against whom they were asserted. Though Mr. Flowers signed an affidavit in the underlying case indicating that he was an executive officer and not a co-employee, and though the petition was amended accordingly, neither that affidavit nor the amendment would have had an effect on liability in the underlying case because executive officers are captured within the statutory definition of "employee" in Section 287.020.1. *Auto Owners Mut. Ins. Co. v. Wieners*, 791 S.W.2d 751, 756 (Mo. App. S.D. 1990). It was Mr. Flowers's general status as an

9

"employee" under the Workers' Compensation Act that operated to negate the affirmative defense of exclusivity of the Act. In other words, for purposes of liability in the underlying case, Mr. Flowers's status as a co-employee or as an executive officer was a difference without meaning. For these reasons, we grant points six and seven.

In point nine, Appellants argue that the trial court erred in granting summary judgment on the denial of their assertion of ILM's vexatious refusal to pay the judgment. The trial court reasoned that there could be no vexatious refusal claim because this was a third-party liability policy, not a first-party policy, **and** because, based on the facts, ILM had not acted vexatiously—even if it had denied coverage. Appellants challenge the second basis for the trial court's ruling, but failed to develop the first. Because Appellants failed to develop an argument to challenge the trial court's assessment of the applicability of a vexatious refusal claim on third-party contracts in their brief, the issue is deemed abandoned on appeal. *Ford Motor Credit Co. LLC v. Harris*, 386 S.W.3d 864, 869 (Mo. App. S.D. 2012).

### Conclusion

For the above reasons, we reverse and remand for further proceedings.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Gabbert, P.J. and Howard, J. concur.

10